2021 IL App (2d) 200611-U
No. 2-20-0611
Order filed October 25, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| JANET OLSON and SCOTT OLSON, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 2015-L-558 |
| | ) | |
| THE CENTERS FOR FOOT AND ANKLE | ) | |
| SURGERY, LTD., d/b/a Foot & Ankle | ) | Honorable |
| Centers and PAUL BISHOP, D.P.M., | ) | Edward C. Schreiber, |
| | ) | Susan Clancy Boles, |
| Defendants-Appellees. | ) | Judges, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Justices Zenoff and Birkett concurred in the judgment.

**ORDER**

¶ 1   *Held*: We affirm the trial court's 2020 denial of plaintiffs' motion to reconsider the 2016 partial dismissal of their complaint based on the statute of limitations. We reject plaintiffs' arguments that the court should have granted the motion to reconsider based on new evidence and/or an alleged misapplication of the law. Affirmed.

¶ 2   On May 14, 2015, plaintiffs, Janet and Scott Olson, filed a multicount complaint against, *inter alia*, defendants, Paul Bishop, D.P.M., and The Centers for Foot and Ankle Surgery, Ltd. (Foot & Ankle Centers), alleging negligence pertaining to Janet's November 30, 2011, and May 15, 2013, surgeries. The allegations of negligence pertaining to the 2011 surgery were later

removed from the complaint. First, on August 31, 2016, as a concession to defendant Rush-Copley Medical Center, Inc. (a party not at issue in this appeal), plaintiffs removed obvious references to the 2011 surgery in the counts of their second amended complaint against Rush *and the instant defendants*, proffering a proposed third amended complaint that did not include those claims. Later, on September 22, 2016, in response to the instant defendants' pending motion to dismiss certain portions of the second amended complaint based on the statute of limitations, the trial court (Judge Edward C. Schreiber) approved a few word changes to plaintiffs' proposed third amended complaint which clarified that only the 2013 surgery was at issue. The transcripts from the hearing on the 2016 motion to dismiss are not contained in the record on appeal, but the changes made are evident from the pleadings.

¶ 3     On May 20, 2020, plaintiffs moved to reconsider the 2016 partial dismissal, arguing that they had new evidence, in the form of a controlled expert witness, Dr. Steven Goldman, who would establish that a continuing course of negligent treatment linked the two surgeries such that a claim based on the 2011 surgery was not time-barred. Plaintiffs also argued that the 2016 trial court misapplied the existing law concerning the limitations period. On July 29, 2020, the trial court (Judge Susan Clancy Boles) denied the motion, explaining that to allow plaintiffs to pursue claims related to the 2011 surgery at this point went against the rules of discovery as well as fair play. The court also disagreed that Judge Schreiber had misapplied the law in 2016. The court entered an order pursuant to Illinois Supreme Court Rule 304(a) (eff. March 8, 2016). Plaintiffs appeal the September 22, 2016, order and the July 29, 2020, denial of the motion to reconsider. The thrust of their appeal is that they should be able to pursue allegations of negligence related to the 2011 surgery.

¶ 4 Plaintiffs have forfeited their right to directly appeal the September 22, 2016, order, because they subsequently filed amended complaints without evincing an intent to preserve the stricken allegations. See, *e.g.*, *Tabora v. Gottlieb Memorial Hospital*, 279 Ill. App. 3d 108, 113-14 (1996). Nevertheless, we may consider the propriety of the September 22, 2016, order as part of plaintiffs' argument that the 2020 court should have reconsidered the 2016 order based on an alleged misapplication of the law.

¶ 5 We determine that the trial court did not abuse its discretion in denying the motion to reconsider based on the opinions of plaintiffs' new expert. The trial court reasonably determined that plaintiffs improperly used the motion to reconsider to introduce a new theory into the case after discovery was largely completed. Also, we determine that the trial court did not err in determining that Judge Schreiber did not misapply the law in 2016. On this point, plaintiffs misconstrue the history of the case. The timeliness of allegations pertaining to the 2011 surgery was not before the court in 2016, due to plaintiffs' own concessions. Moreover, the transcripts from the 2016 hearing are not part of the record on appeal, and we do not know whether or to what degree plaintiffs may have agreed to the word changes which clarified that only the 2013 surgery was at issue. We must resolve any doubts on this point in favor of defendants as appellees. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984). Accordingly, we affirm the trial court's ruling.

¶ 6                                    I. BACKGROUND

¶ 7                    A. An Overview of Janet's Podiatric Treatment with Bishop

¶ 8 Janet began seeing Bishop in January 2007 for treatment of a painful right metatarsophalangeal joint (MPJ) in her great toe. Bishop diagnosed a tear in Janet's MPJ capsule, treated Janet with a steroid injection, and fitted her with an orthotic. Between 2007 and 2011,

Bishop treated Janet for various problems associated with her MPJ and right foot, noting in May 2011 that Janet had degenerative joint disease.

¶ 9    On November 30, 2011, Bishop operated on Janet in an effort to treat a right bunion and her MPJ issues (the 2011 surgery). Specifically, Bishop performed an MPJ arthroplasty with an implant insertion. During the surgery, Bishop lacerated a tendon, which he repaired.

¶ 10    The 2011 post-operative course was uneventful. Janet saw Bishop twice before problems with her MPJ arose again. First, in June 2012, Janet saw Bishop for pain in the arch and ball of her right foot and was treated with orthotics and anti-inflammatories, and was instructed to ice, rest, and stretch. Second, in December 2012, Janet saw Bishop for a checkup. She reported that she was doing well and Bishop advised her to return in one to two years to check the implant.

¶ 11    On April 11 and April 29, 2013, Janet returned to Bishop for pain associated with her right MPJ. On April 11, 2013, Bishop prescribed pain medication. On April 29, 2013, Janet and Bishop discussed the possibility of a second surgery on the right foot. Bishop's notes provided: "We are going to likely just do a bony resection around the implant, reduce the bone, and have [a replacement] implant ready just in case we see [problems]."

¶ 12    On May 15, 2013, Bishop performed the surgery on Janet's right foot (the 2013 surgery). Bishop's preoperative diagnosis was "symptomatic [first MP] post joint replacement right foot," *i.e.*, joint pain, and "[e]xostosis [first MPJ] right foot," *i.e.*, a bone spur. His post-operative diagnosis was the same, but he added "implant failure Primus size 30 implant [first MPJ] right foot" and "possible detritic or silicone synovitis [first MPJ] right foot." Bishop stated in an operative procedure note that he observed thin plastic- or silicone-looking pieces of tissue along the joint, exposing the implant. He sent these pieces to pathology to determine if Janet had "shortening of the implant" or had started "detritic or silicone synovitis" within the first MPJ.

Bishop then removed the original implant and replaced it with a new implant of identical type and design.

¶ 13    On June 5, 2014, Janet saw a new provider, Dr. John Grady of Advocate Christ Medical Center.  Janet informed Grady that the pain in her right first MPJ was worsening.  On August 29, 2014, Grady performed a third surgery.  Grady's pre- and post-operative diagnoses stated that Janet had significant degeneration from the previous implant.  Grady removed the implant and performed a fusion of the first MPJ with plates and screws.

¶ 14                    B. Plaintiffs' Complaint for Negligence (Medical Malpractice)

¶ 15    On May 14, 2015, plaintiffs filed a complaint for negligence in the circuit court of Cook County against defendants Bishop and Foot & Ankle Centers alleging negligence pertaining to Janet's 2011 and 2013 surgeries and loss of consortium as to Scott.  Plaintiffs also named Rush-Copley and Tornier, Inc., the manufacturer of a device used in the surgeries, as defendants, but those parties have since been dismissed and/or settled with plaintiffs.  The case was subsequently transferred to Kane County.

¶ 16    Attached to the May 14, 2015, complaint was an affidavit by plaintiffs' counsel pursuant to section 2-622 of the Code of Civil Procedure (Code) (735 ILCS 5/2-622 (West 2014)).  In it, he explained that he had not been able to procure a health professional to certify that there were legitimate grounds for a malpractice suit before the expiration of the statute of limitations.  The trial court granted an extension to procure the report, which plaintiffs obtained and attached to subsequent complaints.

¶ 17    The section 2-622 report, completed by a podiatrist whose name has been redacted from the record, set forth Janet's treatment by Bishop from 2007 to 2013, as well as her 2014 treatment

by Grady all as described above. *Supra*, ¶¶ 8-13. Based on his review of Janet's treatment, the podiatrist wrote:

> "RELEVANT MALPRACTICE[:]
>
> *During the surgery of 5-15-13* for the previous failed implant arthroplasty, after Dr. Bishop removed the old implant, he should not have placed a new implant of the same type/design as the old implant into the first MPJ [metatarsophalangeal joint].
>
> CONCLUSION[:]
>
> Based on the above facts, my record review, knowledge of podiatric medicine and my 20+ years in practice, Dr. Bishop's decision to put a new implant into Ms. Olson's first MPJ (*on 5-15-13*) that was identical to the implant that had previously failed, falls below the standard of care of the pediatric medical community, and led to Ms. Olson's pain (and related problems) in the first MPJ and necessitated the third surgery (implant removal and fusion of the MPJ) and is medical malpractice." (Emphases added.)

¶ 18 Although plaintiffs' section 2-622 certifying expert determined that the relevant malpractice occurred during the 2013 surgery, not the 2011 surgery, plaintiffs retained allegations of negligence pertaining to the 2011 surgery in subsequent complaints through the second amended complaint.

¶ 19 In the second amended complaint, in count II (medical negligence against Rush-Copley under a theory of agency), count III (medical negligence against Foot & Ankle Centers under a theory of agency) and count IV (medical negligence against Bishop), plaintiffs alleged the same 12 negligent acts and omissions. These acts and omissions, set forth in subparagraphs a through k of each respective count, were as follows:

"a. Recommended and performed the Second Surgical Procedure using an implant of the same type/design as the implant used in the First Surgical Procedure,

b. Caused JANET to sustain severe and permanent injury to her right foot during the First Surgical Procedure by failing to perform the surgical procedure with the proper technique,

c. Caused JANET to sustain severe and permanent injury to her right foot during the Second Surgical Procedure by failing to perform the surgical procedure with the proper technique,

d. Caused JANET to sustain severe and permanent injury to her right foot during the Second Surgical Procedure by utilizing an implant of the same type/design as the previous failed implant arthroplasty,

e. Failed to recognize pre-operatively in a patient, like JANET, with a history of previous implant arthroplasty, prior to the performance of the Second Surgical Procedure, that she was not a proper candidate for artificial great toe joint replacement surgery using an implant of the same type/design as utilized in the previous failed implant arthroplasty,

f. Improperly and unskillfully performed the First Surgical Procedure,

g. Improperly and unskillfully performed the Second Surgical Procedure,

h. Improperly and unskillfully provided JANET pre-operative care prior to the Second Surgical Procedure,

i. Improperly and unskillfully provided JANET pre-operative care prior to the Second Surgical Procedure,

j. Improperly and unskillfully provided JANET post-operative care subsequent to the First Surgical Procedure,

k. Improperly and unskillfully provided JANET post-operative care subsequent to the Second Surgical Procedure, and/or

l. Failed to properly evaluate whether JANET was a proper candidate for the implantation of the Second Product prior to the performance of the Second Surgical Procedure."

¶ 20                                        C. 2016: Motions to Dismiss

¶ 21    On June 29, 2015, Rush-Copley filed two motions to dismiss subparagraphs (b), (f), (h), (i), (j), and (k) pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2014)), as those subparagraphs pertained to the 2011 surgery, not the 2013 surgery.[1]  In the first motion, Rush-Copley argued that the section 2-622 report failed to support allegations that defendants provided negligent care and treatment in connection with the 2011 surgery and, thus, those allegations should be dismissed and stricken from the complaint.  They cited to section 2-622(g), which provides that a "failure to file a certificate required by this Section shall be grounds for dismissal under Section 2-619."  735 ILCS 5/2-622(g) (West 2014).  Second, Rush-Copley argued that allegations of negligence related to the 2011 surgery should be dismissed as barred by the statute of limitations.  735 ILCS 5/2-619(a)(5) (West 2014) (providing for the dismissal of actions not commenced within the time limited by law); 735 ILCS 5/13-212 (West 2014) (setting forth a two-year statute of limitations in medical malpractice actions).

¶ 22    On July 1, 2016, defendants Bishop and Foot & Ankle Centers also moved to dismiss portions of the second amended complaint.  They adopted the arguments set forth in Rush-

---

[1] Subparagraphs (h) and (i) are identical.  Also, it is unclear why Rush-Copley sought to dismiss subparagraph (k).  Nevertheless, this is the history of the case.

Copley's motions and further stated that defendants should be precluded from "seek[ing] relief from any time period prior to May 15, 2013." They took fault with the same subparagraphs as had Rush-Copley, excepting subparagraph (k). Again, those subparagraphs were (b), (f), (h), (i), and (j). They also took fault with four additional subparagraphs: (a), (d), (e), and (l).

¶ 23 On August 31, 2016, plaintiffs responded to the motions to dismiss. First, "as a concession to Rush[-Copley's] arguments that these subparagraphs are not properly supported by the [section 2-622] report," plaintiffs agreed to delete subparagraphs (b), (f), (h), (i), (j), and (k). They also moved for leave to file a third amended complaint, *instanter*, reflecting that those subparagraphs had been deleted. The proposed third amended complaint alleged the same six acts of negligence against Rush-Copley, Foot & Ankle Centers, and Bishop:

"a. Recommended and performed the Second Surgical Procedure using an implant of the same type/design as the implant used m the First Surgical Procedure [also labeled (a) in the second amended complaint],

b. Caused JANET to sustain severe and permanent injury to her right foot during the Second Surgical Procedure by failing to perform the surgical procedure with the proper technique [formerly labeled (c)],

c. Caused JANET to sustain severe and permanent injury to her right foot during the Second Surgical Procedure by using an implant of the same type/design as the previous failed implant arthroplasty [formerly labeled (d)],

d. Failed to recognize pre-operatively in a patient, like JANET, with a history of previous implant arthroplasty, prior to the performance of the Second Surgical Procedure, that she was not a proper candidate for artificial great toe joint replacement surgery using

an implant of the same type/design as utilized in the previous failed implant arthroplasty,
[formerly labeled (e)],

    e. Improperly and unskillfully performed the Second Surgical Procedure [formerly labeled (g)]; and/or

    f. Failed to properly evaluate whether JANET was a proper candidate for the implantation of the Second Product prior to the performance of the Second Surgical Procedure [formerly labeled (l)]."

¶ 24    Thus, in their proposed third amended complaint, plaintiffs reduced the number of alleged negligent acts and/or omissions from 12 to 6. The timeliness of four of the allegations remained in dispute, *i.e.*, the subparagraphs now labeled (a), (c), (d), and (f). The timeliness of two of the allegations had never been in dispute, *i.e.*, the subparagraphs now labeled (b) and (e).

¶ 25    Critically, plaintiffs confirmed: "Assuming that this [c]ourt grants [p]laintiffs leave to file their Third Amended Complaint, *the only unresolved issues* are whether subparagraphs [(a), (c), (d), and (f)] *** are barred by the two-year limitations period contained in [section 13-212 of the Code] as contended by [d]efendants Bishop and [Foot & Ankle Centers]." (Emphasis added.) As to subparagraphs (a) and (c), plaintiffs argued: "There can be no doubt [these subparagraphs] concerning actions and/or omissions which occurred during the performance of the Second Surgical Procedure, a procedure performed on May 15, 2013, are timely." As to subparagraphs (d) and (f), plaintiffs argued that the continuing-course-of-negligent-treatment rule as set forth in *Cunningham v. Huffman*, 154 Ill. 2d 398 (1993), served to render the allegations timely.

¶ 26    On September 14, 2016, defendants Bishop and Foot & Ankle Centers replied. They referenced only subparagraphs (d) and (f). They took issue with plaintiffs' iteration of the continuing-course-of-negligent-treatment rule, arguing that its application would not serve to

render timely the allegations set forth in subparagraphs (d) and (f). They also re-addressed the timeliness of claims related to the 2011 surgery (without referencing specific subparagraphs).

¶ 27 On September 22, 2016, the trial court heard argument on the motions to dismiss. The transcript of the hearing is not contained in the record on appeal nor is there a bystanders' report. That same day, the court entered a written order providing:

"Defendants motions to dismiss are granted and plaintiffs are barred from making any allegations of negligence/injuries prior to the May 15, 2013, surgery. Plaintiffs are given leave to file their third amended complaint *** which may not allege negligence/injuries prior to May 15, 2013."

¶ 28 On September 30, 2016, plaintiffs filed their third amended complaint. The third amended complaint contained the same six acts and/or omissions of negligence that plaintiffs had proposed in their responsive pleading, with changes noted here in bold and strikeout:

"a. Recommended and performed the Second Surgical Procedure using an implant of the same type/design as the implant used in the First Surgical Procedure,

b. Caused JANET to sustain severe and permanent injury to her right foot during the Second Surgical Procedure by failing to perform the surgical procedure with the proper technique,

c. Caused JANET to sustain severe and permanent injury to her right foot during the Second Surgical Procedure by ~~using~~ **utilizing** an implant of the same type/design as ~~the previous failed implant arthroplasty~~ **used in the First Surgical Procedure**,

d. Failed to recognize ~~pre-operatively~~ **intraoperatively** in a patient, like JANET, with a history of previous implant arthroplasty, ~~prior to~~ **during** the performance of the Second Surgical Procedure, that ~~she~~ **JANET** was not a proper candidate for artificial great

toe joint replacement surgery using an implant of the same type/design as utilized in the ~~previous failed implant arthroplasty~~ **First Surgical Procedure**, []

e. Improperly and unskillfully performed the Second Surgical Procedure, and/or

f. Failed to properly evaluate **intraoperatively** whether JANET was a proper candidate for the implantation of the Second Product ~~prior to the performance of the Second Surgical Procedure~~."

¶ 29    Thus, in two of the contested subparagraphs, (d) and (f), plaintiffs changed the word "pre-operatively" to "intraoperatively" and the words "prior to" to "during." Also, in subparagraphs (d) and (c), plaintiffs avoided the implication that the 2011 surgery had been performed negligently by striking the phrase "the previous *failed* implant arthroplasty." (Emphasis added.) The trial court apparently agreed with plaintiffs that, as to subparagraph (a), there was no question that the allegation was timely.

¶ 30          D. 2016 to 2020: Subsequent Amendments, Motions, and Discovery

¶ 31    On November 2, 2016, plaintiffs filed a fourth amended complaint. Plaintiffs do not identify the changes from the third to the fourth amended complaint. Relevant here, however, the fourth amended complaint contained verbatim the same six acts and/or omissions of negligence that plaintiffs had alleged in the third amended complaint.

¶ 32    The fourth amended complaint was the operative complaint heading into discovery. On November 2, 2017, the court entered an order concerning the scope of Bishop's deposition: "[Bishop's] deposition will be limited primarily [to the] May 15, 2013, surgery with the understanding that some additional limited questioning might be needed with respect to care prior to May 15, 2013."

¶ 33     By March 2020, the parties had deposed 13 lay witnesses and independent expert witnesses pursuant to Illinois Supreme Court Rule 213(f)(1) and Rule 213(f)(2) (eff. Jan. 1, 2018), respectively. On March 10, 2020, plaintiffs disclosed a new controlled expert witness, Goldman, pursuant to Rule 213(f)(3). Plaintiffs would later explain that they sought Goldman's expertise when, in late 2019, their section 2-622 certifying expert informed them that he would not be available for trial.

¶ 34     Goldman offered an expanded theory of negligence. That is, instead of focusing exclusively on negligence pertaining to the 2013 surgery, Goldman opined that defendants also committed negligent acts in relation to the 2011 surgery. In his view, Bishop breached the standard of care when he performed both surgeries without first correcting an underlying structural deformity: a condition known as Metatarsus primus elevatus. Had Bishop first corrected the underlying structural deformity, Janet likely would not have had to undergo the third surgery in 2014 with Grady.

¶ 35     On March 17, 2020, defendants Bishop and Foot & Ankle Centers moved to strike and bar Goldman's opinions concerning defendants' care prior to May 15, 2013. They argued that those opinions were barred by the trial court's September 22, 2016, order, which prohibited plaintiffs from making "any allegations of negligence/injuries prior to May 15, 2013," due to the expiration of the statute of limitations.

¶ 36     On April 21, 2020, plaintiffs responded that the trial court's November 2, 2017, order, which concerned the scope of Bishop's deposition, modified the September 22, 2016, order. Plaintiffs were later granted leave to supplement their motion with additional authority, *Jacobson v. Natonson*, 164 Ill. App. 3d 126, 130 (1987) (statute of limitations bars the bringing of a suit, not the admission of evidence).

¶ 37    On May 12, 2020, defendants replied that the November 2, 2017, order had not modified the September 22, 2016, order.  Also, defendants clarified that they were not seeking to preclude plaintiffs' expert Goldman from testifying to the "sheer facts" from 2011.  Instead, defendants sought to strike and bar any opinions concerning alleged negligence from 2011.

¶ 38                              E. 2020: Motion to Reconsider

¶ 39    On May 20, 2020, as an apparent alternative to their position that the November 2, 2017, order modified the September 22, 2016, order, plaintiffs moved to reconsider the September 22, 2016, order.  Plaintiffs argued that they should be able to allege negligence pertaining to the 2011 surgery:

> "Dr. Goldman's review of all the materials, including the deposition of Defendant Bishop, which was not available to Plaintiffs' original certifying physician, sheds new light on the strength of Plaintiffs' previous arguments that there was in fact a continuous course of negligent treatment of Janet Olson by Defendant Bishop that necessarily includes the negligence related to Plaintiffs 2011 Surgery."

¶ 40    Plaintiffs asserted that defendants would not be prejudiced should the trial court grant their motion to reconsider:

> "Should the Court grant this Motion and allow Plaintiffs to include allegations of negligence for the 2011 Surgery as stated in the Second Amended Complaint, Plaintiffs request **no additional discovery** as the facts and circumstances surrounding the 2011 Surgery were sufficiently addressed by both parties in the depositions of Plaintiff Janet Olson and Defendant Paul Bishop.  ***.  Consequently, there is no prejudice to Defendants should this Motion be granted as no additional discovery will be necessary."  (Emphasis in original.)

Plaintiffs also argued that Judge Schreiber had misapplied the existing law in 2016 by concluding that the allegations of negligent acts pertaining to the 2011 surgery were time barred.

¶ 41    On June 22, 2020, defendants responded to the motion to reconsider.  Defendants argued that they *would* be prejudiced should the trial court grant plaintiffs' motion.  Defendants recounted that plaintiffs waited nearly four years to file a motion to reconsider and did so after 13 depositions had proceeded.  Had defendants known that allegations of negligence relating to the 2011 surgery were in play, it would have "conducted discover entirely differently."

¶ 42    On July 6, 2020, plaintiffs replied to defendants' response to the motion to reconsider.  Addressing the issue of prejudice, they reasoned: "[g]iven Dr. Gold[man]'s conclusions, this Court can allow [p]laintiffs to assert negligence for the 2011 [s]urgery under the Relation Back Doctrine [735 ILCS 5/2-616(b) (West 2014)] as defendants can claim neither surprise nor lack of knowledge of [p]laintiffs' allegations on this point."

¶ 43    On December 8, 2020, the trial court heard argument on defendants' motion to strike and plaintiffs' motion to reconsider.  It first heard the motion to reconsider, as its ruling on that motion would control its ruling on the motion to strike.

¶ 44    Plaintiffs stood largely on their pleadings.  Defendants, in turn, reminded the court that, in 2016, after plaintiffs made certain concessions concerning the section 2-622 report, there were "basically only four allegations that we were essentially fighting about."  Defendants also contested the timing of the new allegation, noting that plaintiffs could have found a Rule 213(f)(3) expert to "just support the May 15, 2013, negligence claim, but they didn't do that.  They've created the circumstance [of bringing in the 2011 claim] four years later, and now are trying to prejudice defendants ***."

¶ 45    The trial court asked: "[Counsel for plaintiff], you will agree, will you not, that obviously the law of the case for the last four years has been that the *** alleged negligence related to the 2011 surgery has not been at issue ***?"  Counsel for plaintiffs answered: "I think that justice in this case dictates that we can establish a continuous course of [negligent] treatment for these two negligent acts."

¶ 46    The trial court denied the motion to reconsider.  First, it was not certain that Goldman's opinions constituted "new evidence" for the purposes of a motion to reconsider: "Nothing new has been discovered, just a change in an expert and an opinion."  Even if Goldman's opinion did constitute new evidence, the court agreed that granting the motion would prejudice defendants:

> "[Goldman's opinions] relate to an issue which has previously *** been removed from this case[.]  [To allow Goldman's opinion that defendants acted negligently during the 2011 surgery] would put this case back to the beginning stages possibly of discovery almost four years following that issue.
>
> It would cause prejudice to the defendants as they have a right to rely upon not only the Court rulings, but also the basis set forth in the 2-622 report and the allegations in the pending Complaint in forming and proceeding with the defense strategy in this case."

The court further explained that, without the new expert opinion, plaintiffs could not establish a continuous course of negligent treatment:

> "[I]n order to extend the statute of limitations in this case, plaintiffs would have to establish an issue of fact related to a continuous course of negligent treatment by Dr. Bishop to the plaintiff.

***

Dr. Bishop continued to monitor and follow up with the plaintiff, but there is no evidence of and no opinion by plaintiffs' *original expert* of continued negligence during these visits." (Emphasis added.)

Finally, the trial court disagreed that Judge Schreiber had misapplied the law in the first instance when entering the September 22, 2016, order: "[E]specially as the facts were presented at the time with Judge Schreiber, I don't see that either."

¶ 47 The trial court next determined that, having denied plaintiffs' motion to reconsider, it would necessarily grant defendants' motion to strike and bar Goldman's opinions concerning defendants' care prior to May 15, 2013.

¶ 48 Plaintiffs then sought clarification. Citing to *Jacobson*, they noted the distinction between allegations of negligence prior to the 2013 surgery and the admissibility of evidence pertaining to facts occurring prior to the 2013 surgery.

¶ 49 The trial court clarified: "I think everybody understands that the care that this plaintiff received, and some of that treatment that she received prior to the actual surgery in 2013 is relevant. Those facts are relevant, but the negligence related to [the 2011] surgery is out." The court concluded that continued discussion on the matter, including various hypotheticals posed by plaintiffs, were best reserved for motions *in limine*. The trial court entered a Rule 304(a) order, and this timely appeal followed.

¶ 50                                    II. ANALYSIS

¶ 51 Plaintiffs appeal the September 22, 2016, order and the July 29, 2020, denial of the motion to reconsider that order. However, as defendants note, a plaintiff may forfeit his right to directly appeal a trial court's dismissal of certain claims when he files an amended complaint that does not reallege, refer to, incorporate, or otherwise evince a clear intent to preserve stricken portions of

the dismissed complaint. *Tabora*, 279 Ill. App. 3d at 113-14. This is true even when a plaintiff subsequently obtains a Rule 304(a) finding. *Id*. Thus, when plaintiffs filed their third and fourth amended complaints without realleging, referring to, incorporating, or otherwise evincing a clear intent to preserve the stricken portions of the second amended complaint, they forfeited their right to directly appeal the trial court's related rulings.

¶ 52 We decline to discuss the forfeiture in depth, because plaintiffs' arguments may nevertheless be properly considered solely through a review of the trial court's 2020 denial of the motion to reconsider. Defendants do not dispute that the September 22, 2016, order was interlocutory in nature and, as such, could be modified or vacated by the trial court at any time prior to a final judgment. *Braglia v. Cephus*, 146 Ill. App. 3d 241, 246 (1986). The trial court had authority to reconsider the September 22, 2016, order. After denying plaintiffs' motion to reconsider and declining to vacate or modify the September 22, 2016, order, the court entered a Rule 304(a) finding. Thus, we may first consider whether the trial court abused its discretion by determining that the "new evidence" put forth in the motion to reconsider, *i.e.*, Goldman's opinion, did not justify modification of the September 22, 2016, order. We may next consider whether the trial court erred in determining that Judge Schreiber did not misapply the law in the first instance when entering the September 22, 2016, order. This second question, which is subject to *de novo* review, requires us to engage in the same analysis that we would have engaged in had we entertained a direct appeal of the September 22, 2016, order.

¶ 53 A trial court may grant a motion to reconsider based on newly discovered evidence that was not available at the time of the original hearing, changes in existing law, or errors in the court's application of the existing law. *Evanston Ins. Co. v. Riseborough*, 2014 IL 114271, ¶ 36. The standard of review of a trial court's denial of a motion to reconsider depends on the basis for the

motion. *Liceaga v. Baez*, 2019 IL App (1st) 181170, ¶ 26. When the basis for the motion concerns new matters, such as additional facts or new arguments or legal theories, we review the trial court's determination for an abuse of discretion. *Id.* In contrast, when the basis for the motion is an alleged misapplication of the existing law, our review is *de novo*. *Id.* Thus, we review the trial court's determination that the new evidence did not justify a modification of the September 22, 2016, order for an abuse of discretion. An abuse of discretion occurs only when the trial court's ruling is arbitrary, fanciful, unreasonable or where no reasonable person would take the view adopted by the trial court. *Id.* ¶ 27. We review the trial court's determination that Judge Schreiber did not misapply the existing law *de novo*.

¶ 54    Assessing the trial court's determinations requires consideration of several separate but related concepts, including the statute of limitations, the discovery rule, the statute of repose, and the continuous-course-of-negligent-treatment rule. As to medical malpractice actions, these concepts find their start in section 13-212(a) of the Code, which provides:

> "Except as provided in Section 13-215 of this Act, no action for damages for injury or death against any physician, dentist, registered nurse or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than *2 years* after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, but in no event shall such action be brought more than *4 years* after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death." (Emphases added.) 735 ILCS 5/13-212(a) (West 2014).

¶ 55     The first italicized portion of section 13-212(a) instructs as to the statute of limitations. ("[No action] shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever occurs first.")  The statute of limitations is triggered by the patient's discovery of the injury.  See *Follis v Watkins*, 367 Ill. App. 3d 548, 557 (2006).  The discovery rule provides that the statute of limitations " 'starts to run when a person knows or reasonably should know of his injury and also knows or reasonably knows that it was wrongfully caused.  At that point the burden is upon the injured person to inquire further as to the existence of a cause of action.' "  *Hertel v. Sullivan*, 261 Ill. App. 3d 156, 162 (1994) (quoting *Witherell v. Weimer*, 85 Ill. 2d 146, 156 (1981)).

¶ 56     The second italicized portion of section 13-212(a) instructs as to the statute of repose. ("[I]n no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death.")  The statute of repose is triggered by the defendant's wrongful act, omission, or occurrence that caused the injury.  *Cunningham*, 154 Ill. 2d at 406.  The statute of repose period begins to run when the negligent treatment ends, regardless of whether the plaintiff is aware of the injury.  *Id*. This may lead to harsh results, such as when the repose period ends before a patient even discovers that he is injured.  *Id*.  The reason for this harsh result is that the statute of repose gives effect to a different policy concern than the statute of limitations; the statute of repose is intended to terminate the possibility of liability for a defendant after a defined period of time.  *Id*.  The statute of repose also serves to check the potential for "long tail" exposure to medical malpractice claims brought about by the discovery rule.  *Id*.

¶ 57    While primarily a device to protect a defendant against indefinite exposure to liability, the statute of repose does afford an argument for the plaintiff's position in at least one respect.  That is, the statute's use of the word "occurrence" recognizes the possibility of continued negligence against the plaintiff.  *Id.* at 405.  "When the cumulative results of the continued negligence is the cause of the [plaintiff's] injury, the statute of repose cannot start to run until the last date of the negligent treatment."  *Id*.  This is known as the continuous-course-of-negligent-treatment rule.  *Id.* at 406.  The question of whether there has been a continuous course of negligent treatment is one of fact, which may be established by expert testimony.  *Jones v. Dettro*, 308 Ill. App. 3d 494, 500 (1999).  To prevail under a continuous-course-of-negligent-treatment theory, the plaintiff must demonstrate that (1) there was a continuing and unbroken course of negligent treatment and (2) the treatment was so related as to constitute one continuing wrong.  *Cunningham*, 154 Ill. 2d at 406.  One reason for the application of the continuous-course-of-negligent-treatment rule is that patients are often forced to rely upon what they are told by the treating physician or surgeon. *Hertel*, 261 Ill. App. 3d 156, 161 (1994).

¶ 58    *Follis* provides an illustration of how the continuous-course-of-negligent-treatment rule operates in conjunction with the statute of limitations, the discovery rule, and the statute of repose. In *Follis*, the defendant dentist treated the plaintiff twice per year from March 1994 through April 2002.  *Id.* at 549.  Plaintiff then moved out of state and, in October 2002, upon receiving care from another dentist, discovered that her mouth was in a "total state of disrepair."  *Id.* at 549, 558. Plaintiff filed her complaint against the first dentist in January 2004.  *Id*. at 549.  The appellate court would later determine that there was at least a question of fact as to whether the defendant dentist engaged in a continuing course of negligent treatment.  *Id*. at 558-59.

¶ 59    Applying the discovery rule and the statute of limitations to the facts in *Follis*, the plaintiff had until October 2004, two years after her discovery of the injury, to file a complaint against the first dentist. *Id.* at 549-50. She easily met this deadline by filing the complaint in January 2004. Next, applying the statute of repose, the plaintiff had until April 2006, four years after the last negligent act, to file the complaint. She easily met *this* deadline by filing the complaint in January 2004. Accepting, at the pleading stage, that the defendant engaged in a continuous course of negligent treatment so as to constitute one continuing wrong from 1994 to 2002, the claims pertaining to the earlier treatments likewise satisfied the statute of repose. *Id.* at 558-59.

¶ 60    Plaintiffs' theory of the case seeks to employ these concepts as follows. First, plaintiffs concede that, had they sued for negligence relating to the 2011 surgery in isolation, the claim would have run afoul of the two-year statute of limitations. Plaintiffs contend, however, that the 2011 and 2013 surgeries were linked through a continuous course of negligent treatment. Plaintiffs rely on Goldman's opinion to establish the link:

> "Dr. Goldman opined that *** Bishop's failure to recognize, 'identify and correct' the underlying structural deformity prior to either the 2011 or the 2013 surgery[] most likely resulted in the joint implant failure in both instances [citation to record]. Simply put, the structural deformity should have been corrected prior to the 2011 surgery and was not, leading to the failure of the implant, and the same structural deformity should have been corrected prior to the 2013 surgery and it was not, leading to the failure of the second implant.
>
> There can be no clearer example of [continuing] negligent treatment than [Bishop's] failure to correct the structural deformity prior to performing the 2011 surgery,

and then failing to correct the same structural deformity prior to the 2013 surgery. It is the same negligence relating to the same condition."

¶ 61 Thus, according to plaintiffs' theory, Bishop's treatment from 2011 to 2013 constituted one continuous wrong. Plaintiffs did not know of the injury until, at the earliest, the 2013 surgery, at which time the statute of limitations for claims of negligence pertaining to both surgeries began to run. Thus, plaintiffs had until May 15, 2015, two years after the 2013 surgery, to file a complaint against defendants. Plaintiffs met this deadline. Also, under plaintiffs' theory, the statute of repose is easily satisfied. Even in isolation, and without relying upon the continuous-course-of-negligent-treatment doctrine, plaintiffs would have had until November 2015 to satisfy the four-year statute of repose for claims relating to the November 2011 surgery.

¶ 62                    A. Motion to Reconsider: New Evidence

¶ 63 Plaintiffs' primary basis for their motion to reconsider was the discovery of new evidence in the form of Goldman's opinion. As explained above, *supra* ¶¶ 60-61, Goldman's opinion, if accepted, arguably established a continuing course of negligent treatment between the 2011 and 2013 surgeries.

¶ 64 However, a trial court is not *required* to grant a motion to reconsider based on new evidence that was not available at the time of the original hearing; to the contrary, courts "should not permit litigants to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling." *Caywood v. Gossett*, 382 Ill. App. 3d 124, 133-34 (2008) (plaintiff introduced evidence of mental incapacitation for the first time in a motion to reconsider). Courts should weigh the circumstances of the new evidence against the interests of finality and efficiency. See *id*. (denying the motion to reconsider where the movant had no explanation for the late-tendered evidence). Moreover, a motion to reconsider is not a place to raise a new legal theory or

factual argument. *Liceaga*, 2019 IL App (1st) 181170, ¶ 25. Again, when the trial court has been asked to grant a motion to reconsider based on new matters, such as new evidence and new theories, we review its decision for an abuse of discretion. *Id.* ¶ 26.

¶ 65 Here, the trial court did not abuse its discretion in weighing the circumstances of the new evidence (or of the new opinion on existing evidence) against the interests of finality and efficiency. Goldman reviewed the same documentary evidence as the original certifying expert, with the exception of Bishop's recent deposition testimony. Goldman's focus extended beyond the claims of negligence pertaining to the 2013 surgery, which was inconsistent with prior orders of the court. In asking the trial court to then reconsider its prior rulings in light of Goldman's continuous-course-of-negligent-treatment theory, plaintiffs improperly sought to use a motion to reconsider to introduce a new theory *vis-à-vis* their pending fourth amended complaint. See, *e.g.*, *Liceaga*, 2019 IL App. (1st) 181170, ¶ 25.

¶ 66 Plaintiffs claimed that they could not have obtained Goldman's opinion earlier, because it was not until their original section 2-622 certifying expert became unavailable for trial that they sought out Goldman as a replacement expert. By that time, four years had passed and Rule 213(f)(1) and (f)(2) discovery had closed. Although plaintiffs assert that *they* would not need to conduct additional discovery, plaintiffs' position does not account for *defendants'* need to conduct additional discovery. Defendants had conducted 13 depositions with an aim to defend against allegations of negligence pertaining to the 2013 surgery, not the 2011 surgery. Indeed, the pending fourth amended complaint did not allege negligence pertaining to the 2011 surgery and defendants informed the court at the hearing on the motion to reconsider that, if they had known that claims relating to the 2011 surgery were in play, they would have conducted discovery "entirely differently." Were the court to have granted the motion, defendants would have had to question

and potentially requestion witnesses in depth in 2020 concerning events that happened in 2011. Under these circumstances, the trial court did not abuse its discretion when it determined that, "for plaintiff to come in at this point and claim the law of the case should be changed because of a new opinion from a new expert goes against the fundamentals of the rules of discovery as well as fair play."

¶ 67    Plaintiffs also argue that an application of the relation back doctrine negates any claim of undue prejudice to defendants. Specifically, they argue: "Given Dr. Goldberg's conclusions, this Court can allow plaintiffs to assert negligence for the 2011 Surgery under the Relation Back Doctrine as Defendants can neither claim surprise nor lack of knowledge on this point." In support, plaintiffs cite *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 359 (2008). Plaintiffs acknowledged at oral argument that they forfeited this argument by raising it for the first time in 2020 in their reply to defendants' response to their motion to reconsider. Forfeiture aside, the argument is unpersuasive.

¶ 68    Under the relation back doctrine, a party may amend a complaint to add a new cause of action that would otherwise be barred by the statute of limitations if the new claim grew out of the same transaction or occurrence set up in the original pleading. 735 ILCS 5/2-616(b) (West 2014); *Porter*, 227 Ill. 2d at 353. The relation back doctrine enables a plaintiff to preserve a cause of action against loss by reason of technical default unrelated to the merits. *Id*. at 355. At the same time, the relation back doctrine affords the defendant a fair opportunity to investigate the circumstances upon which liability is based while the evidence is accessible. *Id.* The same-transaction-or-occurrence rule prevents a defendant from being prejudiced by directing his attention, within the limitations period, to the facts that form the basis of the claim against him. *Id.* The supreme court has adopted the sufficiently-close-relationship test to determine if a new

allegation grew out of the same transaction or occurrence set up in the earlier pleadings. *Id.* at 360. Under that test, a new claim will relate back to the original and timely filed claim if it is based on events close in time and subject matter and led to the same injury. *Id.*

¶ 69 In *Porter*, the court determined that the new claim was sufficiently close to the allegations set up in the earlier pleading so as to relate back to that pleading for purposes of satisfying the statute of limitations. *Id.* at 361-63. There, the new claim that a doctor misread a CT scan grew out of an earlier claim that agents of the hospital failed to report diminishing neurological functioning within the same critical 36-hour period. *Id.*

¶ 70 A direct application of the relation back doctrine is not appropriate in this case. Plaintiffs never sought leave to amend their fourth amended complaint for the purpose of adding allegations of negligence pertaining to the 2011 surgery. We are not being asked to review the trial court's denial of a motion for leave to so amend the complaint. Instead, we are being asked to review the trial court's denial of a motion to reconsider its partial dismissal of the second amended complaint, or, more accurately, to reconsider the tweaks it made to plaintiffs' proposed third amended complaint.

¶ 71 Even by analogy, however, plaintiffs' use of the relation back doctrine is unpersuasive. Unlike the events at issue in *Porter*, which occurred during a 36-hour window, the 2011 and 2013 surgeries were not close in time. The pending fourth amended complaint heading into discovery in this case did *not* direct defendant's attention to the facts that formed the basis of a claim of negligence pertaining to the 2011 surgery. Indeed, plaintiffs' concession to Rush-Copley to remove allegations of negligence pertaining to the 2011 surgery from the second amended complaint did just the opposite, serving as an assurance to *all* defendants that negligence pertaining to the 2011 surgery was not an issue in the case.

¶ 72    By asking this court to apply the relation back doctrine to the circumstances of the instant case, plaintiffs effectively admit that they are using a motion to reconsider to introduce a new theory—a practice that is discouraged. See, *e.g.*, *Liceaga*, 2019 IL App (1st) 181170, ¶ 25. Again, the very aim of the relation back doctrine is to allow a party to amend a complaint to add a new cause of action, *i.e.*, to introduce a new theory. 735 ILCS 5/2-616(b) (West 2014); *Porter*, 227 Ill. 2d at 353. Plaintiffs' reliance on the relation back doctrine as a means to argue that defendants would not have been unduly prejudiced if the trial court were to have granted the motion to reconsider is unavailing.

¶ 73    For the reasons discussed, the trial court did not abuse its discretion in determining that defendants would be unfairly disadvantaged if it were to grant plaintiffs' motion to reconsider on the basis of new evidence.

¶ 74                    B. Motion to Reconsider: Misapplication of Existing Law

¶ 75    We next consider whether Judge Clancy Boles erred in denying the motion to reconsider based on an alleged misapplication of law by Judge Schreiber in entering the September 22, 2016, order. Judge Schreiber approved a few word changes to plaintiffs' proposed third amended complaint which clarified that only the 2013 surgery was at issue and the 2011 surgery was barred by the statute of limitations. Pursuant to section 2-619(a)(5) of the Code, a defendant may move to dismiss an action that was not commenced within the time limited by law. 735 ILCS 5/2-619(a)(5) (West 2014). In considering a motion to dismiss pursuant to section 2-619, the court takes as true all well-pleaded facts, along with all reasonable inferences that can be gleaned from those facts. *Porter*, 227 Ill. 2d at 352. Just as we review the trial court's denial of a motion to reconsider based on an alleged misapplication of law *de novo*, we also review the initial section 2-

619 dismissal *de novo*. *Liceaga*, 2019 IL App (1st) 181170, ¶ 26 (motion to reconsider); *Porter*, 227 Ill. 2d at 352 (motion to dismiss).

¶ 76    In arguing that Judge Schreiber misapplied the law in entering the September 22, 2016, order, plaintiffs again focus on Goldman's opinion that the 2011 and 2013 surgeries were linked through a continuing course of negligent treatment.  Plaintiffs also touch upon their earlier argument that Judge Schreiber misapplied the interrelated concepts of the statute of limitations, the discovery rule, the statute of repose, and the continuous-course-of-negligent-treatment rule.

¶ 77    We briefly dispose of this latter point.  The parties' debate as to how the concepts of the statute of limitations, the discovery rule, the statute of repose, and the continuous-course-of-negligent-treatment rule work together is not dispositive here.  In this section, we are not concerned with whether plaintiffs' claims of negligence pertaining to the 2011 surgery would satisfy section 13-212's statutes of limitations and repose *if* Goldman's opinion that defendants engaged in a continuous course of negligent treatment from 2011 to 2013 were allowed.  We have already determined that the trial court (Judge Clancy Boles) did not abuse its discretion in declining to allow plaintiffs to pursue a new theory of the case so late into discovery.  Rather, we must decide whether Judge Schreiber misapplied the law to the facts accepted by him in entering the September 22, 2016, order.

¶ 78    Simply put, the central problem with plaintiffs' argument is that, while they now rely heavily on Goldman's testimony to establish a continuing course of negligent treatment between the 2011 and 2013 surgeries, *Goldman's testimony was not before the court in 2016*.  Plaintiffs make no real argument that, without Goldman's opinion, they can establish a continuing course of negligent treatment between 2011 and 2013.  As the trial court stated in 2020: "[E]specially as the

facts were presented at the time with Judge Schreiber, I don't see that [Judge Schreiber misapplied the law]."

¶ 79    Indeed, plaintiffs' argument misconstrues the procedural history of the case.  Again, prior to the trial court's 2016 ruling on defendants' motion to dismiss portions of the second amended complaint, plaintiffs agreed that the 2011 surgery and defendants' decisions leading up to the 2011 surgery were not at issue in the case.  Plaintiffs submitted a proposed third amended complaint, which left just four points of contention for the trial court to resolve.  Of those four, plaintiffs argued that the continuous-course-of-negligent-treatment rule operated to preserve the limitations period as to subparagraphs (d) and (f) only.  The trial court made the following changes to subparagraphs (d) and (f):

> "d. Failed to recognize ~~pre-operatively~~ **intraoperatively** in a patient, like JANET, with a history of previous implant arthroplasty, ~~prior to~~ **during** the performance of the Second Surgical Procedure, that ~~she~~ **JANET** was not a proper candidate for artificial great toe joint replacement surgery using an implant of the same type/design as utilized in the ~~previous failed implant arthroplasty~~ **First Surgical Procedure**, []
>
> * * *
>
> f. Failed to properly evaluate **intraoperatively** whether JANET was a proper candidate for the implantation of the Second Product ~~prior to the performance of the Second Surgical Procedure~~."

Plaintiffs do not expressly challenge the word changes made between the pre-September 22, 2016, proposed third amended complaint and the post-September 22, 2016, filed third amended complaint.  Plaintiffs do not discuss whether these tweaks were improper based any alleged negligent treatment by Bishop prior but connected to the 2013 surgery, *i.e.*, at the April 11 and

April 29, 2013, appointments. We do not know whether or to what extent these matters were discussed at the 2016 hearing on the motion to dismiss, because the transcripts from that hearing are not in the record on appeal. More importantly, we do not know whether or to what degree plaintiffs may have agreed with these tweaks at the hearing as part of their concession to Rush-Copley that negligence pertaining to the 2011 surgery would not be an issue in the case. We must resolve these doubts in favor of defendants as appellees. *Foutch*, 99 Ill. 2d at 392.

¶ 80    To the extent that plaintiffs do challenge the word changes made between the proposed and the actual third amended complaints, they do so in the context of seeking assurance that the trial court will admit evidence of treatment prior to May 15, 2013, even if it does not allow claims of negligence prior to May 15, 2013. To this end, they cite *Jacobson*, 164 Ill. 2d at 130-31, which held that the statute of limitations bars the bringing of a suit, not the admission of evidence. The application of *Jacobson* was discussed at the 2020 hearing on the motion to reconsider. There, the trial court recognized the distinction between allegations of negligence prior to the 2013 surgery and the admissibility of evidence pertaining to facts occurring prior to the 2013 surgery. However, it noted that specific hypotheticals were best reserved for motions *in limine*. We, too, decline to further discuss this aspect of the case.

¶ 81    In sum, due to plaintiffs' concession to Rush-Copley, the timeliness of the allegations pertaining to the 2011 surgery was not before the trial court in 2016. Instead, when plaintiffs attempted, in 2020, to reinsert the allegations of negligence pertaining to the 2011 surgery, through the Rule 213(f)(3) discovery disclosures of their new controlled expert witness, Goldman, defendants Bishop and Foot & Ankle Centers moved to bar and strike. Plaintiffs *then* moved to reconsider the 2016 order, recasting the trial court's 2016 decision as centering on the 2011 surgery when, in fact, the court at that time was asked only to approve a few word changes to clarify that

only the May 15, 2013, surgery was at issue in the case. The transcripts from the 2016 hearing are not contained in the record on appeal and, again, to the extent that the subject matter of the hearing went beyond the changes approved by the court, we must resolve any doubts in favor of defendants as appellees. See *Foutch*, 99 Ill. 2d at 392. The record does not support plaintiffs' claim that the trial court misapplied the law in 2016.

¶ 82                                    III. CONCLUSION

¶ 83    For the reasons stated, we affirm the trial court's judgments.

¶ 84    Affirmed.