2024 IL App (2d) 220380-U
No. 2-22-0380
Order filed March 4, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JANET OLSON and SCOTT OLSON, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 15-L-558 |
| | ) | |
| THE CENTERS FOR FOOT AND ANKLE | ) | |
| SURGERY, LTD., d/b/a Foot & Ankle | ) | |
| Centers, an Illinois Corporation, and PAUL | ) | |
| BISHOP, D.P.M., | ) | Honorable |
| | ) | Susan Clancy Boles, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE MULLEN delivered the judgment of the court.
Justices Hutchinson and Kennedy concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) The trial court abused its discretion in striking plaintiffs' amended Rule 213(f)(3) disclosures and barring plaintiffs from any additional standard of care Rule 213(f)(3) opinion disclosure as a Rule 219(c) sanction, (2) the trial court's grant of summary judgment in defendants' favor would be vacated given holding on sanction issue, but (3) the trial court's award of attorney fees was not an abuse of discretion.

¶ 2    On May 14, 2015, plaintiffs, Janet and Scott Olson, filed a multicount complaint against, *inter alia*, defendants, The Center for Foot and Ankle Surgery, Ltd. (Foot & Ankle Centers), and Paul Bishop, D.P.M. (Bishop), alleging negligence pertaining to surgeries Janet underwent on

November 30, 2011, and May 15, 2013. Plaintiffs appeal from orders entered by the circuit court of Kane County on June 9, 2022, July 27, 2022, and September 21, 2022. The order of June 9, 2022, granted in part defendants' motion to dismiss the matter as a discovery sanction against plaintiffs pursuant to Illinois Supreme Court Rule 219(c) (eff. July 1, 2002) by striking plaintiffs' amended expert disclosures and report, barring plaintiffs from disclosing any Rule 213(f)(3) expert or opinion in the matter (see Ill. S. Ct. R. 213(f)(3) (eff. Jan. 1, 2018)), and granting defendants leave to file a petition for attorney fees as a sanction. The order of July 27, 2022, awarded defendants attorney fees in the amount of $7000. The order of September 21, 2022, granted defendants' motion for summary judgment. On appeal, plaintiffs raise three principal issues. First, they argue that the imposition of sanctions pursuant to Rule 219(c) constituted an abuse of discretion because the sanctions imposed were "severe and disproportionate" and defendants failed to comply with Illinois Supreme Court Rule 201(k) (eff. July 1, 2014). Second, they contend that the trial court erred in granting defendants' motion for summary judgment because the court did not consider medical expert testimony and ignored genuine issues of material fact. Third, plaintiffs argue that the trial court abused its discretion in awarding defendants attorney fees as a sanction. For the reasons set forth below, we affirm in part, vacate in part, and remand with directions.

¶ 3                                    I. BACKGROUND

¶ 4     This is the second appeal of this matter to this court. We will restate the facts only as necessary to understand this decision. Plaintiff, Janet Olson, who was the patient of Bishop and Foot & Ankle Centers, sought care for foot pain and had two implant surgeries, in 2011 and in 2013. Simply stated, both surgeries resulted in the identical implant device being used at the same position in Janet's foot. It has become abundantly clear that plaintiffs now contend that both surgeries failed to meet the standard of care, and that they assert a fusion was the proper treatment,

based on the theory that the same anatomical issue that caused Janet pain before the first surgery caused the failure of the first and then the second implant. Janet ultimately was treated by another podiatric surgeon, Dr. John Grady, who performed a fusion in 2014. It is contended that Janet suffers from permanent injuries as a result of the purportedly negligent treatment.

¶ 5    Because suit was not filed until 2015, the defense disputed the timeliness of any allegations of negligence regarding the 2011 surgery. There was a great deal of motion practice concerning what allegations in the complaint and what expert opinions would be allowed in the case. We will summarize by saying all this culminated in rulings by the trial court that plaintiffs would not be able to argue negligence as it relates to the 2011 surgery, although Judge Clancy Boles clarified that: "I think everybody understands that the care that this plaintiff received, and some of that treatment that she received prior to the actual surgery in 2013 is relevant. Those facts are relevant, but the negligence related to [the 2011] surgery is out. *** No negligence or damages or anything prior to the 2013 surgery is warranted or part of this case."

¶ 6    As we related in the first appeal:

"On May 14, 2015, plaintiffs, Janet and Scott Olson, filed a multicount complaint against, *inter alia,* defendants, Paul Bishop, D.P.M., and The Centers for Foot and Ankle Surgery, Ltd. (Foot & Ankle Centers), alleging negligence pertaining to Janet's November 30, 2011, and May 15, 2013, surgeries. The allegations of negligence pertaining to the 2011 surgery were later removed from the complaint. First, on August 31, 2016, as a concession to defendant Rush-Copley Medical Center, Inc. (a party not at issue in this appeal), plaintiffs removed obvious references to the 2011 surgery in the counts of their second amended complaint against Rush *and the instant defendants*, proffering a proposed third amended complaint that did not include those claims. Later, on September 22, 2016, in

response to the instant defendants' pending motion to dismiss certain portions of the second amended complaint based on the statute of limitations, the trial court (Judge Edward C. Schreiber) approved a few word changes to plaintiffs' proposed third amended complaint which clarified that only the 2013 surgery was at issue. The transcripts from the hearing on the 2016 motion to dismiss are not contained in the record on appeal, but the changes made are evident from the pleadings.

On May 20, 2020, plaintiffs moved to reconsider the 2016 partial dismissal, arguing that they had new evidence, in the form of a controlled expert witness, Dr. Steven Goldman, who would establish that a continuing course of negligent treatment linked the two surgeries such that a claim based on the 2011 surgery was not time-barred. Plaintiffs also argued that the 2016 trial court misapplied the existing law concerning the limitations period. On July 29, 2020, the trial court (Judge Susan Clancy Boles) denied the motion, explaining that to allow plaintiffs to pursue claims related to the 2011 surgery at this point went against the rules of discovery as well as fair play. The court also disagreed that Judge Schreiber had misapplied the law in 2016. The court entered an order pursuant to Illinois Supreme Court Rule 304(a) (eff. March 8, 2016)." (Emphasis in original.) *Olson v. Centers for Foot & Ankle Surgery, Ltd.*, 2021 IL App (2d) 200611-U, ¶¶ 2-3.

¶ 7 In the first appeal, the plaintiffs sought to reverse the denial of the motion to reconsider. We affirmed. *Olson*, 2021 IL App (2d) 200611-U, at ¶ 5. We found that Judge Clancy Boles reasonably determined that plaintiffs improperly used the motion to reconsider to introduce a new theory into the case after discovery was largely completed. *Id.* We also held that the trial court did not err in determining that Judge Schreiber did not misapply the law in 2016. *Id.* We ruled that only the 2013 surgery was at issue in the complaint, due to plaintiffs' own concessions. *Id.* We

resolved any doubts on that point in favor of the defense because of the state of the record on appeal. *Id.*

¶ 8     When the case returned to the trial court, plaintiffs' previously disclosed expert, Dr. Goldman, had become unavailable. Plaintiffs were granted leave to disclose a new expert and corresponding opinions. Plaintiffs timely filed their amended expert disclosures and expert report authored by Jason Harrill, D.P.M., MBA. The amended disclosures provide in pertinent part as follows:

"(i) Opinions:

It is anticipated that Dr. Harrill will discuss the proper procedure for phalangeal joint arthroplasty with total joint implantation.

* * *

Dr. Harrill is also likely to discuss causes, symptoms, and presentation of arthritis concurrent with a Metatarsus Primus Elevatus in patients. Dr. Harrill will also likely testify about the prevailing treatments for arthritis in the 1st metatarsal phalangeal joint concurrent with a Metatarsus Primus Elevatus.

* * *

It is anticipated that Dr. Harrill will discuss the standard of care applicable to the care for a podiatrist performing *the same or similar procedures* that Janet Olson underwent.

It is anticipated that Dr. Harrill will apply his knowledge of applicable scientific literature and articles in discussing his opinions relating to patients with arthritis in the 1st metatarsal phalangeal joint concurrent with a Metatarsus Primus Elevatus who are in need of phalangeal joint arthroplasty with total joint implantation and/or metatarsal joint fusion.

* * *

(ii) In addition, Dr. Harrill is expected to testify as follows:

1. Pursuant to Dr. Harrill's review of the information related to the above captioned matter, Dr. Harrill has come to the conclusion that *there was indeed a departure in the care provided to Janet Olson over the course of her treatment experiences with Dr. Paul Bishop.*

2. Dr. Harrill's [*sic*] will discuss the choice of the *initial Austin bunionectomy with possible implant versus a fusion of the first metatarsal phalangeal joint which would have better address [sic] the first metatarsal elevation deformity and hypermobility.*

3. Dr. Harrill's [*sic*] will discuss the subsequent decision of implant removal and replacement with the same Tourier [*sic*] Silastic implant without the use of grommets when there was hypertrophic bony overgrowth secondary to first metatarsal elevation deformity and hypermobility.

4. Dr. Harrill's [*sic*] will discuss Dr. Bishop's failure to recognize the postoperative complication of the Tornier Silastic implant device.

5. Dr. Harrill will likely opine that Dr. Bishop breached the standard of care during the 2013 surgery of Janet Olson by performing *another* 1st metatarsal phalangeal arthroplasty with total joint implantation.

6. Dr. Harrill is likely to testify that a reasonably careful podiatrist in the same or similar circumstance *would not have performed the 1st metatarsal phalangeal arthroplasty with total joint implantation.*

7. Dr. Harrill will testify consistently with these disclosures and with his deposition, if taken, wherein he may discuss any and all explanations of and necessary support for the aforementioned opinions.

\*\*\*

9. Dr. Harrill will testify that it is more likely than not that Janet Olson would not have needed the surgery by Dr. Grady if Dr. Bishop had prescribed the appropriate course of treatment." (Emphases added.)

¶ 9 In addition, Harrill's expert report included, in pertinent part, the following:

"Following my review of the available records and radiographs and based upon my training and experience is [*sic*] a board certified podiatrist *** I have concluded that the care that Janet Olson received by Dr. Paul Bishop from [Foot & Ankle Centers] relating to her surgery in 2013 were [*sic*] below the standard of care causing Ms. Olson to suffer significant pain and require further corrective surgery. In addition, to present, she continues with the sequela of her surgery by Dr. Bishop with ongoing foot and nerve pain and limitations in activity ***. I believe that these limitations are permanent. *This is the result of negligence that occurred during the course of her medical treatment.*

*It is my opinion within a reasonable degree of medical certainty that Ms. Olson's foot pain is permanent and related to the negligence of Dr. Bishop during her original surgery and subsequent treatment.* As a result, she has required additional surgery of fusion of the first metatarsal phalangeal joint with bone grafting ***.

Ms. Olson's poor surgical outcome is the direct result of several factors that resulted in her failure of the Tornier Primus first metatarsal phalangeal joint implant *twice*.

* * *

*This includes the choice of the initial Austin bunionectomy with possible implant versus a fusion of the first metatarsal phalangeal joint which would have better address [sic] the first metatarsal elevation deformity and hypermobility.*

[ ] The subsequent decision of implant removal and replacement with the same Tourier [*sic*] Silastic implant without the use of grommets when there was hypertrophic bony overgrowth secondary to first metatarsal elevation deformity and hypermobility.

[ ] Failure to recognize the postoperative complication of the Tornier Silastic implant device[.]

* * *

In conclusion, it is my opinion that the care received by Ms. Janet Olson was below the standard of care resulting in the failure of her 2013 surgery with permanent pain and suffering." (Emphases added.)

¶ 10 On March 25, 2022, defendants Bishop and Foot & Ankle Centers filed a motion to dismiss plaintiffs' lawsuit in its entirety as a sanction pursuant to Illinois Supreme Court Rule 219(c) (eff. July 1, 2002). Defendants argued that dismissal was appropriate considering plaintiffs' continued and repeated violations of court orders barring plaintiffs from alleging negligence or injuries prior to the May 15, 2013, surgery.

¶ 11 On May 2, 2022, plaintiffs filed their response to defendants' motion to dismiss. In their response, plaintiffs asserted that "[i]t is very clear from plaintiffs' disclosures that [they] limited their expert's disclosures to only negligence occurring during the 2013 surgery. Any other contention is both absurd and sanctionable." Plaintiffs further claimed that defendants' motion "seeks to bar acceptable allegations of negligence for the 2013 surgery by manufacturing allegations of negligence for the 2011 surgery, which do not exist in Plaintiffs' expert's report." Plaintiffs stated that they were "fully aware of the orders of [the] Court," they understood "the limitations imposed by those orders," and their disclosures "did not violate those orders." Plaintiffs continued that their disclosures "do not reference or even mention the 2011 surgery" and that they

were "not trying to back door in some additional negligence outside the scope of this lawsuit." Plaintiffs maintained that "[e]ven if [backdooring additional negligence outside the scope of the lawsuit] was a possibility, such an argument would be quashed at trial, or, if so severe, cause for a mistrial." In addition, plaintiffs contended that dismissal would be too drastic of a sanction and, in any event, defendants failed to comply with Illinois Supreme Court Rule 201(k) (eff. July 1, 2014) in that they did not attempt to confer with plaintiffs' counsel to see if the matter could be clarified prior to filing the motion to dismiss. Plaintiffs argued that defendants should have deposed Harrill if they did not have a clear understanding of his opinions.

¶ 12    On June 8, 2022, the court held arguments on defendants' motion to dismiss. At the hearing, plaintiffs' counsel stated that he was "fully aware that [plaintiffs] are not able to speak about any negligence prior to 2013," adding, however, that their expert "cannot speak in a vacuum." The trial court granted defendants' motion in part and denied it in part. The court reviewed the procedural history that had transpired and noted plaintiffs have "again disclosed standard of care opinions that are violative of the September 22nd, 2016, order, [and] the law of this case as ruled on by this Court and the [S]econd [D]istrict Appellate Court." The court noted that plaintiffs' actions over the last few years demonstrated a "deliberate and unwarranted disregard of the Court's rulings and authority," which has caused prejudice to defendants. The court further noted that it had given plaintiffs "numerous attempts and years *** to comply with its *** orders," yet plaintiffs, in their response brief, attempt to blame defendants for their need to hire a new expert, not having a Rule 201(k) conference, and not deposing their expert. The trial court also found that plaintiffs disingenuously argued in their response brief that the amended disclosure does not reference pre-May 15, 2013, surgery and course of treatment opinions because the phrase "2011 surgery" does not appear anywhere. The court described this claim as "pure

gamesmanship and wordplay." The court further determined that lack of technical compliance with Rule 201(k) "does not negate defendant's [*sic*] motion" because a 201(k) conference would have been "futile" given the procedural history of the case. Ultimately, the court did not grant defendants' request to dismiss the case. Instead, it struck plaintiffs' amended Rule 213(f)(3) disclosures and barred plaintiffs from any additional standard of care Rule 213(f)(3) opinion disclosure. Furthermore, the court granted defendants leave to file a petition for attorney fees for the cost of having to file their motion for sanctions. The court entered a written order in accordance with its oral findings on June 9, 2022.

¶ 13 Defendants then filed a motion for summary judgment. Defendants argued that, in the absence of any expert opinions offered by the plaintiffs, there was no genuine issue of material fact concerning the standard of care. Attached to the motion was Bishop's sworn testimony in which he stated that he complied with the standard of care. Defendants also filed a petition for attorney fees from plaintiff's counsel with an affidavit, seeking fees in the amount of $9542. The trial court granted defendants' petition but stated in its written order that "the fees owed to Defendants' attorneys by plaintiffs is lowered to $7,000.00." After briefing by the parties, the trial court granted summary judgment in favor of defendants, which disposed of the matter in its entirety. The transcript of proceedings was incorporated and adopted in the order. Plaintiffs timely appealed.

¶ 14                                                    II. ANALYSIS

¶ 15 On appeal, plaintiffs raise three principal issues. First, they argue that the imposition of sanctions pursuant to Rule 219(c) constituted an abuse of discretion because the sanctions imposed were "severe and disproportionate" and defendants failed to comply with Illinois Supreme Court Rule 201(k) (eff. July 1, 2014). Second, they contend that the trial court erred in granting

defendants' motion for summary judgment because the court did not consider medical expert testimony and ignored genuine issues of material fact. Third, plaintiffs argue that the trial court abused its discretion in awarding attorney fees to defendants as a sanction. We address each argument *seriatim*.

¶ 16                                    A. Rule 219(c) Sanction

¶ 17    Plaintiffs first argue that the sanctions imposed by the trial court, specifically striking their amended Rule 213(f)(3) disclosures and barring them from submitting any additional standard of care Rule 213(f)(3) disclosures, were "severe and disproportionate." According to plaintiffs, they complied with all discovery deadlines and court orders and their amended expert disclosures did not violate any court orders. Plaintiffs categorize the sanctions imposed by the trial court as a punishment and therefore violative of the underlying purpose of Rule 219(c), which is to promote discovery and a trial on the merits. They also claim that the punitive nature of the sanctions was compounded by the fact that the court imposed an award of attorney fees on top of the striking and barring sanctions.

¶ 18    Defendants respond that the trial court properly exercised its discretion in striking plaintiffs' amended Rule 213(f)(3) disclosures and barring them from any additional standard of care Rule 213(f)(3) opinion disclosure as a sanction under Rule 219(c) given plaintiffs' deliberate, unwarranted, and continuous disregard for the trial court's rulings and authority. Defendants further claim that plaintiffs' actions lacked good faith and caused surprise and prejudice to defendants.

¶ 19    Pursuant to Illinois Supreme Court Rule 219(c) (eff. July 1, 2002), a court may impose sanctions against any party who "unreasonably fails to comply" with the supreme court's discovery rules or any order entered pursuant to those rules. *Shimanovsky v. General Motors Corp.*, 181 Ill.

2d 112, 120 (1998). Rule 219(c) sets forth a nonexclusive list of sanctions which a court may impose, where just, including that "the offending party be debarred from filing any other pleading relating to any issue to which the refusal or failure relates," "the offending party be debarred from maintaining any particular claim, counterclaim, third-party complaint, or defense relating to that issue," and "a witness be barred from testifying concerning that issue." Ill. S. Ct. R. 219(c) (eff. July 1, 2002). Under Rule 219(c), the court may also enter a judgment of default against the offending party, dismiss the offending party's action with or without prejudice, or strike any portion of the offending party's pleadings relating to that issue. Ill. S. Ct. R. 219(c) (eff. July 1, 2002). Additionally, a court "may impose upon the offending party or his or her attorney, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of reasonable expenses incurred as a result of the misconduct, including a reasonable attorney fee." Ill. S. Ct. R. 219(c) (eff. July 1, 2002).

¶ 20    The purpose of imposing sanctions under Rule 219(c) is to "coerce compliance with discovery rules and orders, not to punish the dilatory party." *Shimanovsky*, 181 Ill. 2d at 123. Sanctions are used "to combat abuses of the discovery process and maintain the integrity of the court system." *Locasto v. City of Chicago*, 2014 IL App (1st) 113576, ¶ 27. Sanctions imposed by a court for discovery violations "must be just and proportionate to the offense." *Gonzalez v. Nissan North America, Inc.*, 369 Ill. App. 3d 460, 464 (2006). Thus, in determining an appropriate sanction, "the court must weigh the competing interests of the offending party's right to maintain a lawsuit against the need to accomplish the objectives of discovery and promote the unimpeded flow of litigation." *Bachman v. General Motors Corp.*, 332 Ill. App. 3d 760, 791 (2002). A just order of sanctions is one that, to the degree possible, insures both discovery and a trial on the merits. *Shimanovsky*, 181 Ill. 2d at 123.

¶ 21     In deciding whether to impose sanctions, the trial court must consider the following factors: (1) surprise to the adverse party, (2) the prejudicial effect of the proffered testimony or evidence, (3) the nature of the testimony or evidence, (4) diligence of the adverse party in seeking discovery, (5) timeliness of the adverse party's objection to the testimony or evidence, and (6) the good faith of the party offering the testimony or evidence. *Shimanovsky*, 181 Ill. 2d at 124. Those same factors are considered by a reviewing court in determining if the trial court abused its discretion in deciding whether to impose a sanction. *Locasto*, 2014 IL App (1st) 113576, ¶ 26. No single factor controls whether a court may issue sanctions and each situation presents a unique factual scenario that bears on the propriety of a particular sanction. *Locasto*, 2014 IL App (1st) 113576, ¶ 26.

¶ 22     The decision to impose a particular sanction under Rule 219(c) is discretionary. *Shimanovsky*, 181 Ill. 2d at 120. Accordingly, only a clear abuse of discretion justifies reversal. *Shimanovsky*, 181 Ill. 2d at 120. The threshold for finding an abuse of discretion is a high one and will not be overcome unless it can be said that the trial court's ruling was arbitrary, fanciful, or unreasonable, or that no reasonable person would have taken the view adopted by the trial court. *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009); *In re Leona W.*, 228 Ill. 2d 439, 460 (2008).

¶ 23     With these principles in mind, we address plaintiffs' arguments. While their brief focuses on the severity of the sanction and its punitive nature, they do not concede that their behavior warranted sanctions. We disagree. Application of the *Shimanovsky* factors leads us to conclude that the trial court acted within its discretion in determining that sanctions were warranted in this case.

¶ 24     First, defendants could reasonably claim that they were surprised to receive an amended expert disclosure and report in 2022, which included allegations and criticisms of their care and treatment of Janet prior to the May 15, 2013, surgery. Pretrial discovery is intended to enhance the

truth-seeking process, to enable attorneys to better prepare for a trial, to eliminate surprise, and to promote an expeditious and final determination of controversies in accordance with the substantive rights of the parties. *Greco v. Orthopedic & Sports Medicine Clinic, P.C.*, 2015 IL App (5th) 130370, ¶ 41. Although defendants had not yet disclosed their own expert, they had a right to expect that the issues in plaintiff's expert's opinions would be confined to those established by Judge Schreiber's order of September 22, 2016, and Judge Clancy Boles's July 29, 2020, order denying the motion to reconsider Judge Schreiber's order. The law of the case since September 2016 had been that all negligence and injuries predating the May 15, 2013, surgery were barred. See *McDonald's Corp. v. Vittorio Ricci Chicago, Inc.*, 125 Ill. App. 3d 1083, 1086-87 (1984) (noting that "law of the case" is a "rule of practice, based on sound policy that, where an issue is once litigated and decided, that should end the matter and the unreversed decision of a question of law or fact made during the course of litigation settles that question for all subsequent stages of the suit"). Yet, in 2022, after all the extensive motion practice in court below and following an unsuccessful appeal concerning the propriety of the September 22, 2016, order, plaintiffs doggedly refused to narrow their expert witness disclosure to negligence and criticisms concerning the May 15, 2013, surgery.

¶ 25 Second, there was prejudice to defendants as a result plaintiffs' failure to comply with the barring orders. Plaintiffs' failure to abide by the court orders caused delay and expense to defendants in having to file another motion to enforce already existing orders. We note that the 2013 surgery at issue in this case occurred more than 10 years ago. Plaintiffs' lawsuit was filed more than eight years ago. Yet, plaintiffs have still not filed compliant Rule 213(f)(3) disclosures alleging how defendants breached the standard of care.

¶ 26    The third factor is the nature of the testimony or evidence. Significantly, despite the trial court's clear direction that references to negligence or injuries related to care and treatment provided to Janet prior to May 15, 2013, were barred, Harrill's proposed expert testimony contains such allegations. Plaintiffs' amended expert disclosures and expert report include the following opinions which have been barred pursuant to the trial court's September 22, 2016, order, July 29, 2020, order, and this court's decision affirming the trial court's orders (1) that negligence occurred "during the course of [Janet's] medical treatment," (2) that there was a departure in the care provided to Janet "over the course of her treatment experiences with Dr. Paul Bishop," (3) that Janet would not have needed the surgery by Dr. Grady if Bishop had prescribed "the appropriate course of treatment," (4) that Harrill would discuss the standard of care applicable to a podiatrist performing "the same or similar procedures that Janet *** underwent," (5) that Janet's foot pain is permanent and related to the "negligence of Dr. Bishop during her original surgery and subsequent treatment," and (6) that the choice of the "initial Austin bunionectomy with possible implant versus a fusion of the first MPJ would have better address[ed] the first metatarsal elevation deformity and hypermobility." Other opinions do not specify whether Harrill is referencing the 2011 or 2013 surgery and are vague in nature so as not to comply with the court's order concerning the Rule 213(f) disclosures. For instance, plaintiffs anticipated that Harrill would likely testify that "a reasonably careful podiatrist in the same or similar circumstance would not have performed the 1st metatarsal phalangeal arthroplasty with total joint implantation" without specifying whether this is a reference to the 2011 or 2013 surgery. These disclosures were at the heart of the negligence allegations against defendants.

¶ 27    Plaintiffs claim that they complied with the court orders because their amended disclosures do not reference the 2011 surgery and do not state that any negligence arose from the 2011 surgery.

This same contention was made to and rejected by the trial court. Even if the specific year 2011 is never explicitly stated in plaintiffs' amended expert disclosures, the disclosures and report indicate that negligence occurred during the "course" of Janet's treatment, that Janet's injuries are related to negligence during her "original" surgery, and the "initial" Austin bunionectomy did not address her medical conditions the way a fusion would have. The disclosures, at best, leave open the implication of negligence prior to May 15, 2013, and, at worst, criticize defendants' care and treatment prior to that date.

¶ 28    As to the fourth and fifth *Shimanovsky* factors, the record demonstrates that defendants were diligent and timely in enforcing the court's discovery orders, objecting to plaintiffs' original expert disclosures, filing a motion and reply brief to strike and bar plaintiffs' expert disclosures in 2020, responding to plaintiffs' motion to reconsider the September 22, 2016, order, responding to an appeal, and filing a motion for sanctions and reply brief in 2022, concerning plaintiffs' amended expert disclosures.

¶ 29    As to the sixth *Shimanovsky* factor, the absence of good faith by plaintiff can be inferred from their refusal to abide the court's rulings on this issue. On September 22, 2016, Judge Schreiber's barred and dismissed claims and contentions of negligence prior to May 15, 2013, based upon the statute of limitations. In July 2020, Judge Clancy Boles refused to reconsider that order and barred non-compliant opinions. On appeal, the trial court's ruling was affirmed. While we could understand the determination to preserve disputes for review, once this court ruled on the first appeal, the time to preserve contrary arguments ended. Inexplicably, the trial court's attempts to advance this litigation were again disregarded by plaintiffs.

¶ 30    In short, an application of the *Shimanovsky* factors in the case demonstrates that the trial court properly exercised its discretion in concluding that the imposition of sanctions was

warranted. We therefore turn to whether the particular sanction imposed by the trial court in this case—striking plaintiffs' amended Rule 213(f)(3) disclosures and barring them from any additional standard of care Rule 213(f)(3) opinion disclosure—constituted an abuse of discretion.

¶ 31    The supreme court has stated that a sanction which leads to the dismissal of the case with prejudice is a drastic sanction that should only be invoked when the party's actions show a deliberate, contumacious, or unwarranted disregard of the court's authority. *Shimanovsky*, 181 Ill. 2d at 123. Such a sanction should be imposed as a last resort and only after all the trial court's other enforcement powers have failed to advance the litigation. *Shimanovsky*, 181 Ill. 2d at 123 (and cases cited therein); *Adams v. Bath & Body Works, Inc.*, 358 Ill. App. 3d 387, 395 (2005) (referring to dismissal with prejudice as the "'death penalty' of sanctions"). However, in determining which orders or sanctions to impose under Supreme Court Rule 219(c), the trial court must seek not to impose punishment but rather to accomplish the object of discovery *White v. Henrotin Hospital Corp.*, 78 Ill. App. 3d 1025, 1028 (1979). Where the sanctions are severe, courts have looked to whether prior sanctions were entered and whether a pattern of indifference has been displayed by the offending party. See, e.g., *Cronin v. Kottke Associates, LLC*, 2012 IL App (1st) 111632, ¶ 54, 60 (collecting cases and reversing dismissal where no prior sanctions had been imposed upon offending party).

¶ 32    *Locasto* is instructive on this point. In *Locasto*, the plaintiff sought discovery sanctions after the defendants failed to meet several discovery deadlines. *Locasto*, 2014 IL App (1st) 113576, ¶ 2. The trial court imposed a default judgment as a sanction pursuant to Rule 219(c). The defendants appealed. The *Locasto* court stated that, before imposing a sanction leading to the default or dismissal of a case, the trial court should consider the six *Shimanovsky* factors and then weigh the following four additional factors: (1) the degree of the party's personal responsibility

for the noncompliance, (2) the level of cooperation and compliance with previous discovery and sanction orders, (3) whether less coercive measures are available or would be futile, and (4) whether the recalcitrant party has been warned about the possibility of an order of default or dismissal. *Locasto*, 2014 IL App (1st) 113576, ¶ 35.

¶ 33    Regarding the first factor, the *Locasto* court stated that if more of the responsibility for noncompliance lies with the lawyer, the court should consider sanctioning the lawyer before dismissing the client's case. *Locasto*, 2014 IL App (1st) 113576, ¶ 36. However, if a lesser sanction had already been imposed, then a sanction leading to default or dismissal might be warranted. *Locasto*, 2014 IL App (1st) 113576, ¶ 36. The second factor involves the amount of progress the noncompliant party has made. *Locasto*, 2014 IL App (1st) 113576, ¶ 36. The third factor concerns the availability of intermediate sanctions and the likelihood of their impact. *Locasto*, 2014 IL App (1st) 113576, ¶ 36. As the *Locasto* court noted, "[i]t would be a rare case in which the trial court could not formulate increasingly severe sanctions." *Locasto*, 2014 IL App (1st) 113576, ¶ 37. With respect to the fourth factor, "the trial judge must have alerted the recalcitrant party, orally or in writing, of the possibility that default or dismissal may be appropriate." *Locasto*, 2014 IL App (1st) 113576, ¶ 36.

¶ 34    Applying these factors, the *Locasto* court reversed and remanded. *Locasto*, 2014 IL App (1st) 113576, ¶ 48. It stated that the record did not indicate that the trial court found that the defendants' actions showed a deliberate, contumacious, or unwarranted disregard for the court's authority, or that the trial court warned the defendants that their failure to comply could result in a default judgment. *Locasto*, 2014 IL App (1st) 113576, ¶ 42. The appellate court stated that the trial court should have instead considered and imposed a less onerous sanction. *Locasto*, 2014 IL App (1st) 113576, ¶ 41. It stated that it found the judgment of default unwarranted "[i]n the absence of

any consideration of intermediate sanctions and an advance warning that continued dilatory responses could result in a default." *Locasto*, 2014 IL App (1st) 113576, ¶ 46.

¶ 35 Turning to the present case, we initially acknowledge that the trial court here did not impose a sanction of default or dismissal. But the court did strike plaintiffs' amended Rule 213(f)(3) disclosures and barred plaintiffs from submitting any additional standard of care Rule 213(f)(3) disclosures. Thus, plaintiffs were prevented from presenting an expert witness in support of their claims. Because expert testimony is generally required in a medical negligence case to establish the standard of care (*Johnson v. Armstrong*, 2022 IL 127942, ¶ 52) and causation (*Johnson v. Ingalls Memorial Hospital*, 402 Ill. App. 3d 830, 843 (2010)), this sanction was a stringent one and directly resulted in the trial court granting summary judgment in defendants' favor, thereby terminating plaintiffs' case.

¶ 36 We recognize, even on a cold record, that the trial court rightfully rejected plaintiffs' attorneys' determination to elude the previous orders limiting claims and opinions to those arising after the date of the statute of limitations. But there is no evidence in the record that plaintiffs themselves personally contributed to the violations of the previous orders. Rather, it appears that those are attributable solely to the actions of plaintiffs' attorneys. The case appears to have progressed slowly, but relatively smoothly, between May 14, 2015, when plaintiffs filed their initial complaint, and March 2020, when plaintiffs disclosed Goldman as a new controlled expert witness, and he added opinions in relation to the 2011 surgery. That led to the rulings tested on the first appeal. After that, yet another new expert was required due to circumstances that we are unable to attribute to any misbehavior by plaintiffs or their attorneys. While there were previous barring orders, they were the result of motion practice around what allegations could be pleaded and discovered. None of those were sanctions for delay or other violations of court orders. As far

as our review of the record reveals, the order of June 9, 2022, was the first and only sanction imposed upon plaintiffs. Indeed, there is no indication in the record submitted that the trial court warned plaintiffs of the possibility that it would enter any sanction order, much less one that would effectively terminate the litigation. We hold that under these circumstances, "a death penalty" was an unwarranted abuse of discretion. See *Adams,* 358 Ill. App. 3d at 395.

¶ 37    Therefore, we vacate the order striking plaintiffs' amended Rule 213(f)(3) disclosures in their entirety and barring them from submitting any additional standard of care Rule 213(f)(3) disclosures and remand this matter for further proceedings. Given our holding, we do not address plaintiffs' alternate contention that the trial court abused its discretion in granting defendants' motion for sanctions because defendants failed to comply with Illinois Supreme Court Rule 201(k) (eff. July 1, 2014). Although we vacate the trial court's sanction order, our decision does not restrict the trial court from addressing in the future any additional discovery violation or any further contravention of its very clear orders concerning the statute of limitations. Furthermore, our ruling should not be read to thwart the trial court's ability to strike matter from plaintiffs' disclosures that violate the previous rulings of this court or the trial court. Moreover, we remind the parties that the previous orders, including the September 22, 2016, barring order and the June 9, 2022, denial of the motion to reconsider were affirmed on appeal to this court and remain in effect.

¶ 38                                    B. Summary Judgment

Next, plaintiffs argue that the trial court erred when it granted defendants' motion for summary judgment. Having determined that the sanction imposed by the trial court was too harsh, we must also find that the trial court improperly granted summary judgment in defendants' favor. Because the trial court's decision to grant summary judgment was founded on its decision to strike plaintiffs' amended Rule 213(f)(3) disclosures and bar plaintiffs from any additional standard of

care Rule 213(f)(3) opinion disclosure (see *Besco v. Henslee, Monek & Henslee*, 297 Ill. App. 3d 778, 785 (1998); *Keating v. Dominick's Finer Foods, Inc.*, 224 Ill. App. 3d 981, 987 (1992)), which has been reversed, we also vacate the trial court's entry of summary judgment in defendants' favor and remand for further proceedings.

¶ 39                                                    C. Attorney Fees

¶ 40     Lastly, plaintiffs argue that the trial court abused its discretion when it assessed $7000 in attorney fees as a Rule 219(c) sanction because defendants did not provide itemized billing records to support the fees requested. Defendants respond that where, as here, they provided the court with an affidavit noting their attorneys' hourly rates, detailing customary rates in the industry, and describing the number of hours it took for the services performed, the imposition of attorney fees was proper.

¶ 41     As a general rule, a party is responsible for paying his or her own attorney fees. *Jordan v. Bangloria*, 2011 IL App (1st) 103506, ¶ 19; *Smith v. Gleash*, 325 Ill. App. 3d 79, 85 (2001). As noted earlier, however, Rule 219(c) provides that the trial court may award as a sanction "reasonable expenses incurred as a result of the [offending party's] misconduct, including a reasonable attorney fee." Ill. S. Ct. R. 219(c) (eff. July 1, 2002). Even if Rule 219 were inapplicable, however, the trial court possessed the power to enter sanctions, under these circumstances. See *Cronin,* 2012 IL App (1st) 111632, ¶ 39.

¶ 42     The burden of proof is on the attorney seeking fees to establish the value of his or her services and that the fee constitutes reasonable charges for reasonable services. *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 66 (2009); *Dalan/Jupiter, Inc. ex rel. JRC Midway Marketplace, L.P. v. Draper & Kramer, Inc.*, 372 Ill. App. 3d 362, 371 (2007). In assessing the reasonableness of the fee, the trial court should consider multiple factors, including, but not limited

to, the skill and standing of the attorney, the nature of the case, the novelty and difficulty of the issues involved, as well as usual and customary charges for similar work. *In re Estate of Andernovics*, 197 Ill. 2d 500, 512-13 (2001); *Kellett v. Roberts*, 276 Ill. App. 3d 164, 174 (1995). A court should also use its own experience and knowledge when assessing the reasonableness of a fee request. *Chicago Tribune Co. v. Cook County Assessor's Office*, 2018 IL App (1st) 170455, ¶ 48. Additionally, an award of attorney fees pursuant to Rule 219(c) must relate to misconduct arising from the failure to comply with the court's orders. Ill. S. Ct. R. 219(c) (eff. July 1, 2002); *Jordan*, 2011 IL App (1st) 103506, ¶ 19; *Smith*, 325 Ill. App. 3d at 85; *Hartnett v. Stack*, 241 Ill. App. 3d 157, 175 (1993); *Dyduch v. Crystal Green Corp.*, 221 Ill. App. 3d 474, 480 (1991). The imposition of sanctions is a matter largely within the discretion of the trial court and should not be disturbed on review absent an abuse of that discretion. *Dyduch*, 221 Ill. App. 3d at 480. An abuse of discretion occurs only when the trial court's ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the trial court's position. *Curet v. C&H Exterior Restorations, Inc.*, 2023 IL App (2d) 230030, ¶ 28.

¶ 43    In this case, as part of its order granting sanctions against plaintiffs under Rule 219(c) due to plaintiffs' failure to abide by previous court orders barring certain standard of care opinions, the trial court stated that it would award attorney fees to defendants. Defendants filed their petition, attaching thereto an affidavit executed by two of their attorneys, Steven Heil and Aimee Lipkis. In the affidavit, Heil and Lipkis stated that they are equity partners with the law firm of Cray Huber Horstman Heil & VanAusdal, LLC. Heil stated that he charges $265 per hour and Lipkis stated that she charges $245 per hour. Both attorneys indicated that their hourly fees are reasonable and consistent with rates charged by lawyers with similar experience. Heil and Lipkis further stated that they collectively spent 38.40 hours "preparing Defendants' [m]otion to [d]ismiss as a sanction

to plaintiffs, appearing in [c]ourt to enter a briefing schedule associated with the same, communicating the same to [their] clients, reviewing the [o]rder entered by the [c]ourt, reviewing plaintiff's [*sic*] [r]esponse brief, preparing defendants' reply in support of their [m]otion to dismiss[,] *** preparing for and appearing in [c]ourt for a hearing on said motion[,] and preparing the corresponding [o]rder." Heil and Lipkis represented that for the 38.40 hours spent working on these tasks, they charged defendants $9542. Finally, Heil and Lipkis stated that the charges did not include costs associated with legal research on Westlaw, printing fees, or travel expenses for a court appearance in Kane County. Heil and Lipkis did not attach to their motion an itemization of the attorney fees incurred. The trial court awarded $7000 in attorney fees, explaining "that is a more reasonable figure and time frame."

¶ 44    Plaintiffs argue that defendants were required to provide a sufficiently detailed time record that was maintained throughout the proceeding and which specifies the services performed, by whom they were performed, the time expended thereon, and the hourly rate charged. Plaintiffs conclude that, in the absence of such information, it was an abuse of discretion for the trial court to impose $7000 in attorney fees as a sanction. We disagree.

¶ 45    *Kellett*, 276 Ill. App. 3d 164, is on point. In that case, the trial court, as a sanction pursuant to Illinois Supreme Court Rules 137 (155 Ill. 2d R. 137) and 219(c) (134 Ill. 2d R. 219(c)), assessed attorney fees against a law firm for filing frivolous pleadings. The law firm appealed, arguing, among other things, that the affidavit the plaintiff attached in support of her request for attorney fees was insufficient to support the fee award. We rejected this argument. *Kellett*, 276 Ill. App. 3d at 174. We observed that the affidavit set forth the skill and standing of the plaintiff's attorney, the attorney's customary rate, a statement that the rate was similar to that of other local counsel, a statement that the time expended and rate sought were reasonable in light of the complexity of the

case, a statement that the fees were incurred because of the sanctionable pleadings, the services performed, and the time expended on each task. *Kellett*, 276 Ill. App. 3d at 174. We concluded that the affidavit was sufficient. *Kellett*, 276 Ill. App. 3d at 174.

¶ 46     Admittedly, defendants in this case did not attach to their fee petition a detailed contemporaneous time record specifying the services performed, by whom they were performed, or the time expended on each service. But plaintiffs do not cite any case involving a Rule 219(c) sanction that required them to do so. To the contrary, *Kellett* instructs that an affidavit is sufficient. *Kellett*, 276 Ill. App. 3d at 174. Furthermore, given the trial court's knowledge, experience, and observation with the progression of the case and the attorneys' work, it was able to assess the reasonableness of the charges requested. Indeed, we note that, after reviewing defendants fee petition and the affidavit attached thereto, the court *reduced* the amount requested by more than $2500, a decrease of more than 25%. Finally, it is clear that the trial court in this case awarded the attorney fees tailored to misconduct arising from the failure to comply with the court's orders. Considering this record, we cannot characterize the trial court's ruling as arbitrary, fanciful, or unreasonable, or say that no reasonable person would take the trial court's position. Therefore, the trial court's award of attorney fees did not constitute an abuse of discretion. See *Kellett*, 276 Ill. App. 3d at 174.

¶ 47     Plaintiffs also argue that if we determine that barring their expert was an abuse of discretion, then the attorney fee award should also be reversed as unreasonable. We disagree. Although the barring sanction was unduly harsh, sanctions were nevertheless appropriate. The payment of the defense fees responding to the non-compliance is justly commensurate with the violation, and has the advantage of ensuring both the accomplishment of discovery and a trial on the merits. See *Adams*, 358 Ill. App. 3d at 395 ("A just order is one that is commensurate with the

seriousness of the violation, and ensures both the accomplishment of discovery and a trial on the merits.") (Internal quotes and citations omitted).

¶ 48                                III. CONCLUSION

¶ 49    For the reasons set forth above, we affirm that portion of the trial court's June 9, 2022, order finding that a Rule 219(c) sanction is warranted and granting defendants leave to file a petition for attorney fees as a sanction. We also affirm the trial court's July 27, 2022, order awarding $7000 in attorney fees as a Rule 219(c) sanction. However, we vacate that portion of the June 9, 2022, order striking plaintiffs' amended Rule 213(f)(3) expert disclosure and barring plaintiffs from any further Rule 213(f)(3) disclosure. We also vacate the trial court's order of September 21, 2022, granting summary judgment in defendants' favor. We remand this matter to the circuit court of Kane County for further proceedings consistent with this order.

¶ 50    Affirmed in part, vacated in part, and remanded with directions.