2024 IL App (1st) 221434-U

FIRST DISTRICT,
FIRST DIVISION
April 15, 2024

No. 1-22-1434

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| IAVOR STOYANOV, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois. |
| v. | ) | |
| | ) | No. 19 L 1963 |
| HIMONT LAW GROUP, LTD. and AL HAROON | ) | |
| HUSAIN, | ) | Honorable |
| | ) | Patrick J. Sherlock, |
| Defendants-Appellants. | ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Justices Lavin and Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Trial court acted within its discretion in sanctioning party for repeatedly fabricating expert witness disclosures.

¶ 2    Plaintiff Iavor Stoyanov filed a professional negligence action against his former counsel Al-Haroon Husain and Husain's law firm, Himont Law Group. Following discovery, the trial court found that defendants, on three separate occasions, fabricated their expert witness disclosures "from whole cloth." Pursuant to Rule 219(c) (Ill. S. Ct. R. 219(c) (eff. July 1, 2002)),

the trial court struck defendants' answer to the complaint and entered a default judgment against defendants on the issue of liability. For the reasons that follow, we affirm.

¶ 3                                      BACKGROUND

¶ 4        On February 22, 2019, plaintiff filed a professional negligence action against defendants. Plaintiff alleged that he retained Husain in 2010 and "used defendants as his primary lawyer for several years." In 2012, Husain asked plaintiff to invest in a company known as Credit Union Mortgage Utility Banc, Inc. (CUMU). Plaintiff sought Husain's "assistance and counsel" in structuring the transaction. Husain proposed that plaintiff deposit money into Husain's attorney trust account to be held in escrow for the purchase of CUMU shares, pending a valuation of the company and drafting of corporate documentation. Husain explained that "by depositing the money in his trust account, the money would be protected." Plaintiff deposited $400,000 with defendants, which defendants allegedly misappropriated. As of July 2021, plaintiff had not received any shares in CUMU, and defendants refused to return his $400,000. Plaintiff filed an action against defendants for professional negligence, breach of fiduciary duty, conversion, and spoliation of evidence.

¶ 5                           Defendants' Rule 213(f)(3) Disclosures

¶ 6        On November 4, 2020, defendants disclosed Mary Robinson as an expert witness pursuant to Rule 213(f)(3) (the Robinson Disclosure). Defendants stated that Robinson "will testify that, based on Illinois Supreme Court Rules, and IARDC regulations, that Defendant did not commit any legal malpractice."

¶ 7        Discovery closed on September 30, 2021. On November 10, 2021, plaintiff moved to bar Robinson from testifying, alleging that "[d]efendants did not actually retain Ms. Robinson or even contact her about this case." In support, plaintiff attached an email from his counsel to

Robinson, dated September 23, 2021, stating: "Our office spoke with you a while ago regarding Mr. Husain's alleged retention of you as an expert witness in this matter. You informed us that this was not true and that no one had contacted you. I am emailing to inquire whether this is still the case." Robinson replied: "It remains the case that I have not been retained as an expert witness in Stoyanov v. Husain."

¶ 8        On February 8, 2022, the trial court struck the Robinson Disclosure, finding that it was "woefully inadequate" and that it was unclear whether defendants ever retained Robinson as an expert. Defendants were given until February 21, 2022 to supplement their disclosures, which was later extended to March 8, 2022.

¶ 9        On March 8, 2022, defendants disclosed Michael Favia as their new Rule 213(f)(3) expert. In the Favia Disclosure, defendants attested that Favia had reviewed a lengthy list of documents pertaining to the case, including the complaint, the answer, defendants' exhibits and document production, and plaintiffs' interrogatory answers. Defendants further attested that Favia had reached certain opinions and conclusions to a reasonable degree of legal certainty, including that defendants did not breach their duty of professional care to plaintiff, as they were not acting as plaintiff's counsel "in the matter of CUMU," and did not fail to properly preserve records relating to the case.

¶ 10        On March 15, 2022, plaintiff filed an emergency motion to strike the Favia Disclosure. In response to the issuance of a subpoena, Favia's office had contacted plaintiff and told him that Favia had not been retained or received any documents. Defendant had contacted Favia about being retained as an expert, but "that was it." Plaintiff alleged that defendants had sent him "on a wild goose chase" for a second time "by lying on their disclosure and identifying an 'expert' that

has not been retained." Plaintiff requested that the court bar defendants from presenting any Rule 213(f)(3) witnesses and impose sanctions pursuant to Supreme Court Rules 137 and 219(c).

¶ 11    Defendants responded that Favia had initially agreed to be their expert witness but later "excused himself from the matter." Within 48 hours of learning of this, defendants retained a new expert witness, Michael Raiz. On March 23, 2022, defendants filed a second amended Rule 213(f)(3) disclosure (the Raiz Disclosure) reflecting that Raiz had reviewed the same documents and reached the same conclusions as Favia.

¶ 12    Evidentiary Hearing

¶ 13    At the March 22, 2022 evidentiary hearing on plaintiff's motion for sanctions, the court heard testimony from Robinson, Favia, Raiz, Husain's co-counsel James Pittacora, and Husain. Although the parties did not have a court reporter at the hearing, the testimony of the witnesses is summarized in the court's March 29, 2022 written order.

¶ 14    Robinson testified that "she never spoke with either defendants or their counsel about offering expert testimony in the case, did not review any documents, has formed no opinions and defendants never retained her to offer opinions in this case."

¶ 15    Favia testified that he spoke with defendants about offering expert testimony, but he did not review any documents or form any opinions or conclusions about the case. Favia first learned that defendants had disclosed him as an expert witness upon receiving a subpoena from plaintiff's counsel requesting his file.

¶ 16    Raiz testified that he had spoken with defendants about being an expert in the case and "if given time he would be able to offer opinion testimony." Defendants' disclosure stated that Raiz had "reviewed a laundry list of pleadings" and reached "13 specific opinions and conclusions." Raiz clarified that he only "reviewed 5 documents and a string of emails, *** not defendants'

entire document production," and never formed any "opinions or conclusions in this case." Raiz also admitted that "the Raiz Disclosures were not his disclosures and he did not even see the disclosures until shortly before his testimony." Raiz emphasized that the opinions in the Raiz Disclosure "are not my opinions."

¶ 17      Pittacora, Husain's co-counsel, signed the interrogatory answers disclosing Robinson as defendants' expert, but admitted that he "had never spoken with Robinson" and "relied upon Husain's prior work product" in answering the interrogatory. Husain was the primary "point of contact" with Favia and Raiz, and it was Husain, not Pittacora, who signed the Favia and Raiz Disclosures. Pittacora also admitted that he did not "check on *** Husain's work."

¶ 18      Husain testified that he spoke with Robinson and she agreed to give opinions in the case. No corroborating evidence (*e.g.*, emails, telephone call logs, notes, or draft reports) supported Husain's testimony, which was "flatly contradicted" by Robinson's "credible testimony." Husain also testified that he spoke with Favia, who agreed to give opinions on the case. He initially stated he hand-delivered case documents to Favia, but then "backed off" this assertion, claiming instead he had emailed Favia the documents.

¶ 19      Husain's testimony that Raiz agreed to give opinions in the case was impeached by other evidence. On March 15, 2022, at 1:42 p.m., defendants emailed the Raiz Disclosure to plaintiff. The Raiz Disclosure was signed by Husain and identified Raiz as defendants' expert witness. Later that day, at 2:33 p.m., Raiz sent Husain an email asking if he had sent the case documents yet. Husain replied that he had not. On March 16, Raiz emailed Husain stating that he needed the documents "before [he could] fully commit." Shortly thereafter, Husain sent some unidentified documents to Raiz. Husain ultimately "admitted that Raiz never stated that the Raiz Disclosures were, in fact, his opinions."

¶ 20    On March 29, 2022, the trial court issued a written order finding that "Husain's testimony was, in a word, nonsense." Concluding that defendants' conduct was "an abuse of the discovery process," the court explained that "[t]his is not a situation where Husain simply misstated the opinion of an expert who agreed to testify. Husain made up the disclosures from whole cloth—3 times!" The court found that Husain " 'does not have a firm grasp of his obligation to be truthful with the Court' " (quoting *In re Husain*, 533 B.R. 658, 699 (Bankr. N.D. Ill. 2015)) and acted "outrageous[ly]" in "fabricat[ing] evidence to support his case." "Pursuant to Supreme Court Rule 137 and Supreme Court Rule 219(c)," the court barred defendants' Rule 213(f)(3) witnesses, allowed plaintiff to file a petition for the attorney fees expended in "having to address the repeated false disclosures of expert witnesses," struck defendants' answer, and entered judgment on the issue of liability in favor of plaintiff and against defendants.

¶ 21    The trial court subsequently granted plaintiff's motion for summary judgment on the issue of damages in the amount of $400,000, plus $160,219.18 in prejudgment interest. Plaintiff also filed a petition seeking $33,247.60 in attorney fees. The court awarded fees in the reduced amount of $23,831.05.

¶ 22                                           ANALYSIS

¶ 23    On appeal, defendants argue that their conduct, which they characterize as an "error in presentation," does not "rise to the level of sanctionability." In the alternative, they argue that the sanctions imposed by the trial court were excessive.

¶ 24    As previously noted, the record contains no transcript of the hearing on plaintiff's motion for sanctions. It is well established that appellants have the burden of presenting a sufficiently complete record to support their claims of error on appeal (*Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001) (citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984))), and "any doubt arising

from an insufficiency in the record will be resolved in the appellee's favor" (*McGee v. State Farm Fire & Casualty Co.*, 315 Ill. App. 3d 673, 679 (2000)). Because the trial court summarized the hearing testimony in its written order, the record is sufficient to address defendants' claims on appeal. See *Marx Transport, Inc. v. Air Express International Corp.*, 379 Ill. App. 3d 849, 853 (2008).

¶ 25    The trial court imposed sanctions "[p]ursuant to Supreme Court Rule 137 and Supreme Court Rule 219(c)." However, defendants have forfeited any argument regarding the propriety of Rule 137 sanctions by failing to raise the issue in their appellate brief. Ill. S. Ct. R. 341(h)(7) (eff. Oct 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 26    Rule 219(c) provides that if any party "unreasonably fails to comply" with the court's discovery orders, the court may enter "such orders as are just," including "[t]hat any portion of the offending party's pleadings relating to that issue be stricken and, if thereby made appropriate, judgment be entered as to that issue." Ill. S. Ct. R. 219(c) (eff. July 1, 2002). Reversal of a decision to impose sanctions under Rule 219(c) "is only justified when the record establishes a clear abuse of discretion." *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 123 (1998). A default judgment is "a drastic sanction to be invoked only in those cases where the party's actions show a deliberate, contumacious or unwarranted disregard of the court's authority." *Id.*

¶ 27    Defendants argue that sanctions were not warranted because they did not "unreasonably fail[] to comply" (Ill. S. Ct. R. 219(c) (eff. July 1, 2002)) with any court order. They allege they "rigorously complied" with the court's order to disclose an expert witness and "did not intend to make any incorrect claims," but the trial court "misconstrued [their] draft[ing] errors as intentional."

¶ 28    Rule 213(f)(3) (eff. Jan. 1, 2018) provides that, upon written interrogatory, a party must identify their controlled expert witnesses and state "(i) the subject matter on which the witness will testify; (ii) the conclusions and opinions of the witness and the bases therefor; (iii) the qualifications of the witness; and (iv) any reports prepared by the witness about the case." Our supreme court has emphasized that "[w]here a party fails to comply with the provisions of Rule 213, a court should not hesitate [in] sanctioning the party, as Rule 213 demands strict compliance." (Internal quotation marks omitted.) *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 109 (2004).

¶ 29    The record amply supports the trial court's finding that defendants violated Rule 213(f)(3) on three separate occasions by fabricating opinions from Robinson, Favia, and Raiz. All three experts testified that the opinions attributed to them in the disclosures were not their opinions. Robinson never even spoke with defendants about offering opinions in the case. Favia was not retained or aware he had been disclosed as an expert until receiving a subpoena from plaintiff's counsel. Raiz testified that the opinions set forth in the Raiz Disclosure were "not [his] opinions."

¶ 30    The trial court rejected Husain's testimony that the errors in defendants' disclosures were not intentional. Because the trial court "is in a superior position to observe witnesses, judge their credibility, and determine the weight their testimony should receive," we give "great deference" to the trial court's credibility determinations. *Vician v. Vician*, 2016 IL App (2d) 160022, ¶¶ 27, 29. In their appellate brief, defendants admit that their Rule 213(f)(3) disclosures contain "the likely opinions of the expert[s]." At the time they submitted their Rule 213(f)(3) disclosures, defendants were obviously aware that their experts had not reached the opinions disclosed

therein. In the words of the trial court, "[t]his is not a situation where Husain simply misstated the opinion of an expert who agreed to testify. Husain made up the disclosures *** 3 times!"

¶ 31   In determining an appropriate sanction to impose for a Rule 219 violation, the court must consider: "(1) the surprise to the adverse party; (2) the prejudicial effect of the proffered testimony or evidence; (3) the nature of the testimony or evidence; (4) the diligence of the adverse party in seeking discovery; (5) the timeliness of the adverse party's objection to the testimony or evidence; and (6) the good faith of the party offering the testimony or evidence." *Shimanovsky*, 181 Ill. 2d at 124. A sanction that results in a default judgment is a drastic one "to be invoked only in those cases where the party's actions show a deliberate, contumacious or unwarranted disregard of the court's authority." *Id.* at 123.

¶ 32   Applying these factors to the instant case, we find that they weigh against defendants. First and foremost, defendants acted in bad faith in a manner that displayed "a deliberate, contumacious or unwarranted disregard of the court's authority." *Id.* After their fabrication of Robinson's opinions was brought to the attention of the court, defendants blatantly fabricated two more expert witness disclosures in identical fashion. As the trial court aptly observed, Husain " 'does not have a firm grasp of his obligation to be truthful with the Court' " (quoting *Husain*, 533 B.R. at 699) and acted "outrageous[ly]" in "fabricat[ing] evidence to support his case."

¶ 33   Regarding the nature of the testimony or evidence, "[e]xpert testimony is usually required in a case of professional negligence" to establish the standard of care and the professional's deviation from that standard. *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 295 (2000). As discussed in plaintiff's brief, "[w]ith no expert, [d]efendants would have been unable to contradict [p]laintiff's expert witness' opinions and conclusions and a motion for summary

judgment would have been filed long ago." Moreover, as reflected in the trial court's order, plaintiff expended considerable time and effort addressing "the repeated false disclosures of expert witnesses." See *Olson v. Centers for Foot & Ankle Surgery, Ltd.*, 2024 IL App (2d) 220380-U, ¶ 25 (finding prejudice under *Shimanovsky* where "[p]laintiffs' failure to abide by the court orders caused delay and expense to defendants in having to file another motion to enforce already existing orders").

¶ 34     As to plaintiff's diligence and the timeliness of his objection, it is unclear when he first became aware that the Robinson Disclosure was fabricated. However, plaintiff's motion to strike the Favia Disclosure and sanction defendants pursuant to Rule 219(c) was filed on the same day plaintiff learned the disclosure was fabricated. The only factor arguably weighing in defendants' favor is surprise to the adverse party, as plaintiff would have been pleasantly surprised to learn that defendants' experts did not actually hold opinions unfavorable to plaintiff. However, this factor does not outweigh the other *Shimanovsky* factors, particularly that of defendants' bad faith.

¶ 35     In *Sander v. Dow Chemical Co.*, 166 Ill. 2d 48, 67-68 (1995), our supreme court affirmed the trial court's dismissal of plaintiffs' action as a Rule 219(c) sanction after plaintiffs violated four court orders setting deadlines for the filing of an amended complaint and continued to replead matters that had been stricken by court order. *Id.* at 69. Our supreme court explained:

> "In determining an appropriate sanction, the trial judge must weigh the competing interests of the parties' rights to maintain a lawsuit against the necessity to accomplish the objectives of discovery and promote the unimpeded flow of litigation. *** Where it becomes apparent that a party has willfully disregarded the authority of the court, and

such disregard is likely to continue, the interests of that party in the lawsuit must bow to the interests of the opposing party." *Id.* at 68-69.

Likewise, the sanction imposed in the instant case was warranted based on defendants' "deliberate and continuing disregard for the court's authority" (*id.* at 67).

¶ 36       Defendants' reliance on *Shimanovsky*, 181 Ill. 2d at 124-26, and *H & H Sand & Gravel Haulers Co. v. Coyne Cylinder Co.*, 260 Ill. App. 3d 235 (1994), is misplaced. In *Shimanovsky*, our supreme court held that dismissal of plaintiffs' action was an unreasonable sanction for plaintiffs' destructive testing of allegedly defective power-steering components prior to the commencement of the lawsuit, because the testing was done in good faith to determine if plaintiffs had a viable cause of action. *Shimanovsky*, 181 Ill. 2d at 125-26. Similarly, in *H & H*, 260 Ill. App. 3d at 248, "[t]he evidence does not establish that the plaintiffs deliberately destroyed relevant evidence harmful to their case," because the relevance of the evidence at issue did not become apparent until years later. Thus, a major factor in both cases was the good faith of the parties, unlike the present case, where defendants repeatedly displayed a deliberate lack of candor with opposing counsel and the court.

¶ 37                                          CONCLUSION

¶ 38       For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 39       Affirmed.